Melody WILLIAMS, Plaintiff, Appellant
and Cross-Respondent,

v.

STATE FARM INSURANCE COMPANY,
a corporation, Defendant, Respondent
and Cross-Appellant.

No. 17496.

Supreme Court of Utah.

Aug. 27, 1982.

John L. McCoy, Salt Lake City, for plaintiff, appellant and cross-respondent.

Roger H. Bullock of Strong & Hanni, Salt Lake City, for defendant, respondent and cross-appellant.

OAKS, Justice:

This is an action by the beneficiary of life insurance against the insurer for the face amount of the policy. After the jury gave its verdict on special interrogatories, the court entered judgment for the defendant, no cause of action. Plaintiff's appeal presents a single issue having to do with an alleged misrepresentation the decedent-insured made on the "Medical History portion of Life Application" in applying for the policy. Plaintiff contends that this issue should not have been submitted to the jury (1) because under U.C.A., 1953, § 31–19–7(1), the Medical History form was not "part of the policy" and therefore was not "admissible in evidence in any action relative to such policy," and (2) because, in any case, the defendant insurer waived its right to rely on the medical form because its answer did not plead misrepresentation as an affirmative defense.[1]

The insurer issued a $38,000 policy of life insurance on plaintiff's husband in 1977. In 1979, he was killed in a head-on automobile collision under circumstances indicating that his intoxication was a principal cause of his death. The insurer denied plaintiff's claim on the basis "that there was a serious and material misrepresentation in obtaining the policy...." The insurer's letter explained: "We relied upon the representations made in the application and had we been aware of Mr. Williams' treatment for alcoholism with Dr. Jeppson and use of antabuse prior to our application, we would not have issued the policy." This action followed.

There was ample evidence at trial from which the jury could conclude that the decedent had a serious drinking problem and had been treated for excessive use of alcohol. Dr. Jeppson, his family physician, testified that he had treated decedent for alcoholism from 1974 to 1976, including prescriptions for antabuse, a drug used for patients otherwise unable to control their drinking. Dr. Jeppson also recommended consultation with a psychiatrist, Dr. Nielsen. Dr. Nielsen saw the decedent almost weekly through most of 1976 and several times in 1977 for treatment of various problems including drinking. While Dr. Nielsen concluded that the decedent was not an alcoholic, he did diagnose his problem as alcohol abuse, and encouraged him to continue taking antabuse. Dr. Nielsen testified that the decedent was a "binge" drinker, who drank impulsively without regard for the consequences. The blood alcohol level reported at the time of his death (.088%) indicated the ingestion of about five drinks in one hour's time.

In his signed "Life Application," dated Sept. 14, 1977, the insured answered the following question as noted:

> 10. Have you ever received treatment or joined an organization for alcoholism or drug habit?     yes   no
>                          —   x

In the "Medical Examiner's Report-Adult, Medical History Portion of Life Application," dated Sept. 29, 1977, which was also signed by the insured, he answered the following question as noted:

---

1. The defendant insurer has cross-appealed, contending that if the judgment is not affirmed, a new trial should be granted because of various errors at trial. In the view we take of the appeal, it is unnecessary for us to deal with this cross-appeal.

2. Have you ever been treated for or ever had any known indication of:

* * *

1. Excessive use of alcohol, tobacco, or any habit-forming drugs?  yes  no
   — x

.So far as material to this appeal, the special verdicts of the jury found as follows:

1. That the decedent's answer to question No. 10 on the Life Application *was not* an omission, an incorrect statement, or a misrepresentation;

2. That the decedent's answer to question No. 2.1. on the Medical History *was* an omission, an incorrect statement, and a misrepresentation; and

3. That although the answer to question 2.1. was not fraudulent, it was material to the acceptance of the risk and material to the hazard assumed by the insurer; and

4. That the insurer would not have issued the policy and would not have issued the policy at the same premium rate or in as large an amount if the true facts had been made known as required in the application.[2]

Consistent with these special verdicts, the district court entered judgment for the defendant insurer.

The jury's special verdict that there was no omission, inaccuracy, or misrepresentation on the question having to do with "alcoholism" disposes of that basis for the insurer's denial of plaintiff's claim. This appeal must therefore turn upon whether the jury could properly hear evidence and rely upon the decedent's false answer to question 2.1. of the Medical History that he had never been treated for excessive use of alcohol.

## I.
## WAS THE MEDICAL HISTORY PART OF THE POLICY?

Plaintiff first argues that the Medical History, which contained decedent's false denial that he had ever been treated for

excessive use of alcohol, is not part of the policy and was therefore inadmissible in evidence under U.C.A., 1953, § 31–19–7(1), which reads as follows:

No application for the issuance of any life or disability insurance policy or annuity contract shall be admissible in evidence in any action relative to such policy or contract, unless a true copy of such application was attached to, or otherwise made a part of the policy or contract when issued.

■ Plaintiff challenges the district court's specific finding "under our statute and the business practices of the carrier that this [Medical History] is a portion of the policy, it's included in the policy." As a result of this finding, the court permitted the Medical History to be introduced in evidence and later allowed the jury to consider the insured's answer to question 2.1. in their deliberations. Plaintiff attacks the trial court's ruling as contrary to plaintiff's testimony that she did not remember finding a copy of the Medical History with the insurance policy in the family financial papers. In support of the court's conclusion, the insurer refers to testimony that it was standard procedure for the insurer to attach a copy of the Medical History and Life Application to each policy when it was issued, that there was no evidence that this procedure varied in this case, and that the Medical History form that was introduced in evidence was in the insurer's file. In addition, the insurer points to the following language that appears just above the insured's signature on the Medical History: "this Medical History shall be a part of the application for life insurance on my life."

On appeal, the record is reviewed in the light most favorable to the findings and action of the trial court, which are entitled to a presumption of validity and will not be disturbed if they are supported by substantial, competent evidence. *Search v. Union Pacific Railroad Co.,* 649 P.2d 48 (1982);

---

**2.** These special interrogatories treat the bases for denial of recovery under U.C.A., 1953,

§ 31–19–8, discussed in Part II, *infra.*

*Litho Sales, Inc. v. Cutrubus,* Utah, 636 P.2d 487 (1981); *Car Doctor, Inc. v. Belmont,* Utah, 635 P.2d 82 (1981); *Hutcheson v. Gleave,* Utah, 632 P.2d 815 (1981). The evidence reviewed above provides the required support. We therefore decline to overrule the district court on this question.

Plaintiff cites numerous cases making an insurance application inadmissible if it is not physically "attached to" or "endorsed upon" the policy of insurance. *E.g., Johnson v. Des Moines Life Association,* 105 Iowa 273, 75 N.W. 101 (1898); *Blatz v. Travelers Insurance Co.,* 272 App.Div. 9, 68 N.Y.S.2d 801 (1947); *Sandberg v. Metropolitan Life Insurance Co.,* 342 Pa. 326, 20 A.2d 230 (1941). *Also see Annot.,* 18 A.L.R.3d 760, 766–67 (1968), and cases cited therein, such as *Economy Fire & Casualty Co. v. Thornsberry,* 66 Ill.App.3d 225, 23 Ill.Dec. 13, 383 N.E.2d 780 (1978). But an examination of these cases reveals that with but one exception, which is not in point here,[3] all were based upon statutes that made the application form inadmissible if it was not physically attached to or endorsed upon the policy. In contrast, the inadmissibility dictated by § 31–19–7(1) of our statute does not apply where the application form is *either* "attached to, or *otherwise made a part of the policy* . . . ." (Emphasis added.) The district court's finding and conclusion that the Medical History was "included in" and "a portion of" the policy obviously relied on the emphasized language. Hence, plaintiff's cases, which apply statutes with more restrictive requirements, are distinguishable.

We therefore conclude that § 31–19–7(1) did not make the Medical History inadmissible in this action on the policy.[4]

3. *Lundmark v. Mutual of Omaha Ins. Co.,* 80 Wash.2d 804, 498 P.2d 867 (1972), involved a statute identical to Utah's. But the additional document that occasioned the holding of inadmissibility in that case was an inter-office memorandum prepared by the insurer after the application was submitted. That memorandum was not signed by the insured. In addition, the case contains no discussion of the effect of the "otherwise made part of" language discussed above.

## II.

## WAS THE DEFENSE PROPERLY PLEADED?

Second, plaintiff contends that the insured's misrepresentation that he had never been treated for excessive use of alcohol should not have been submitted to the jury because that affirmative defense was not properly pleaded under Utah R.Civ.P. 8(c), and was therefore waived under Rule 12(h). *Pratt v. Board of Education,* Utah, 564 P.2d 294, 298 (1977).

This issue turns on how specifically a defendant must plead an affirmative defense under U.C.A., 1953, § 31–19–8. That statute, on which the insurer relies, provides that all statements in any application for an insurance policy shall be deemed to be representations, and that omissions, incorrect statements, or misrepresentations "shall not prevent a recovery under the policy" unless they are (a) fraudulent, or (b) material either to the acceptance of the risk or to the hazard insured, or (c) the insurer would not have issued the policy if it had known the true facts.

The insurer's answer contained the following paragraph, whose adequacy is at issue here:

> As a separate affirmative defense, defendant alleges that on or about September 14, 1977, Charles Miller Williams completed a written application for said life insurance policy in part as follows:

> 10. Have you ever received treatment or joined an organization for alcoholism or drug habit?     yes   no
>                                                      —   x

Defendant further alleges that said answer was fraudulent or material to ac-

4. In the alternative, plaintiff contends in her reply brief that the district court's conclusion that the Medical History form was part of the life insurance policy and could therefore be admitted in evidence erroneously invaded the fact-finding province of the jury. *E.g.,* 17A C.J.S. *Contracts* § 616 p. 1249 (1963). We decline to consider this argument, because it is raised for the first time on appeal. *Bekins Bar V Ranch v. Beryl Baptist Church,* Utah, 642 P.2d 371 (1982); *Collier v. Frerichs,* Utah, 626 P.2d 476 (1981).

ceptance of the risk or to the hazard assumed by defendant, or defendant in good faith either would not have issued the policy or would not have issued it at the same premium rate . . . if the true facts had been made known as required by the application.

Plaintiff contends that this affirmative defense is insufficient in three respects: (1) it refers only to "fraudulent" answers, whereas the jury found no fraud; (2) it refers only to "treatment . . . for alcoholism," whereas the jury found no omission, incorrect statement, or misrepresentation in the insured's answer respecting alcoholism; and (3) it refers to an alleged false answer on question 10 on the application, but it makes no reference to question 2.1. on the Medical History.

Plaintiff's arguments raise serious questions about the adequacy of defendant's pleadings. Before we address these questions, it will be helpful to review our rules and decisions governing the pleading of affirmative defenses.

Rule 8(a)(1) of the Rules of Civil Procedure, adopted in 1950, requires that a pleading set forth "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Defenses must be stated "in short and plain terms . . . ." Rule 8(b). "Each averment of a pleading shall be simple, concise and direct." Rule 8(e)(1). Rule 8(c) specifies that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively . . . fraud . . . and any other matter constituting an avoidance or affirmative defense." Finally, Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

Our decisions have construed these requirements. *Burr v. Childs,* 1 Utah 2d 199, 204, 265 P.2d 383, 387 (1953), unanimously approved a pleading the Court characterized as "a crisp statement of ultimate facts." That opinion quotes with approval the following passage from *Hickman v. Taylor,* 329 U.S. 495, 500–01, 67 S.Ct. 385, 388–389, 91 L.Ed. 451 (1947), concerning the Federal Rules, from which our Rules had been taken:

Under the prior federal practice, the pretrial functions of notice-giving, issue-formulation and fact-revelation were performed primarily and inadequately by the pleadings. Inquiry into the issues and the facts before trial was narrowly confined and was often cumbersome in method. The new rules, however, restrict the pleadings to the task of general notice-giving and invest the deposition-discovery process with a vital role in the preparation for trial.

*Blackham v. Snelgrove,* 3 Utah 2d 157, 160, 280 P.2d 453, 455 (1955), quoted this same language and also referred approvingly to other authorities, as follows:

Thus, it can very often be found stated in these cases that a complaint is required only to " * * * give the opposing party fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved."

The leading statement of these pleading principles in the context of an affirmative defense is Justice Crockett's much-cited opinion for the Court in *Cheney v. Rucker,* 14 Utah 2d 205, 211, 381 P.2d 86, 91 (1963), which held admissible a supplementary agreement reducing the compensation fixed in a real estate contract notwithstanding it had not been specifically pleaded as an affirmative defense. After explaining that the purpose of the Rule 8(c) requirement that affirmative defenses be pleaded was "to have the issues to be tried clearly framed," the Court added that this was only one of the Rules:

They must all be looked to in the light of their even more *fundamental purpose of liberalizing both pleading and procedure to the end that the parties are afforded the privilege of presenting whatever legitimate contentions they have pertaining to their dispute. What they are entitled to is notice of the issues raised and an opportunity to meet them. When this is accomplished, that is all that is required.* Our rules provide for liberality to allow examination into and settlement of all

issues bearing upon the controversy, but safeguard the rights of the other party to have a reasonable time to meet a new issue if he so requests. [Emphasis added.]

The foregoing passage was quoted with approval by a unanimous Court in *Eie v. St. Benedict's Hospital,* Utah, 638 P.2d 1190, 1193–94 (1981) (answer referring generally to fraudulent inducement, estoppel, and breach by plaintiffs held sufficient pleading to raise issue that parties' agreement not integrated and therefore subject to modification by contemporaneous oral communications).

█ It is evident from these statements that the fundamental purpose of our liberalized pleading rules is to afford parties "the privilege of presenting whatever legitimate contentions they have pertaining to their dispute," *Cheney v. Rucker, supra,* subject only to the requirement that their adversary have "fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved." *Blackham v. Snelgrove, supra.* The functions of issue-formulation and fact-revelation are appropriately left to the deposition-discovery process. The rules "allow examination into and settlement of all issues bearing upon the controversy," *Cheney v. Rucker, supra,* with latitude for proof that extends beyond the pleadings, where appropriate. Rule 15(b). It also appears from the cited decisions that these principles are applied with great liberality in sustaining the sufficiency of allegations stating a cause of action or an affirmative defense.

█ The application of these principles to specific pleadings is also instructive. An allegation of "certain derogatory and libelous statements" is insufficient; a complaint for defamation must set forth "the language complained of ... in *words* or *words* to that effect ...." *Dennett v. Smith,* 21 Utah 2d 368, 369, 445 P.2d 983, 984 (1968). An allegation that the defendant conspired to "annoy, threaten and intimidate the plaintiff" is insufficient when it does not state "the nature or substance of

the acts allegedly committed by defendants ...." *Utah Steel & Iron Co. v. Bosch,* 25 Utah 2d 85, 86, 87, 475 P.2d 1019, 1020 (1970). Allegations which contained merely broad and general statements that a "false affidavit and false pleadings were filed" but which contained "no allegation whatever of the contents, nature or substance" of any such false statements are insufficient. *Heathman v. Fabian & Clendenin,* 14 Utah 2d 60, 62, 377 P.2d 189, 190 (1962). It appears from these precedents that when the pleader complains of conduct described by such general terms as libel, intimidation, or false statements, the allegation of the conclusion is not sufficient; the pleading must describe the nature or substance of the acts or words complained of.

The same is true of fraud. Rule 9(b) specifies that "the circumstances constituting fraud ... shall be stated with particularity." In *Heathman v. Hatch,* 13 Utah 2d 266, 267–68, 372 P.2d 990, 991 (1962), a complaint charging a lawyer with "fraud," "conspiracy," and "negligence" was dismissed for failure to state a cause of action. In affirming unanimously, this Court stated:

> It is to be noted that the terms "fraud," "conspiracy" and "negligence" are but general accusations in the nature of conclusions of the pleader. They will not stand up against a motion to dismiss on that ground. *The basic facts must be set forth with sufficient particularity to show what facts are claimed to constitute such charges.* [Emphasis added.]

Similarly, in *Shayne v. Stanley & Sons, Inc.,* Utah, 605 P.2d 775, 776 (1980), the Court affirmed the granting of summary judgment for defendants on a complaint charging "fraud" where plaintiff admitted in answering defendant's interrogatories that he could not designate any specific fraud on the part of defendants, but had brought his action "to determine what acts were instigated by defendants ... to deceive plaintiff."

Against the background of the foregoing principles, we now examine plaintiff's arguments on the insufficiency of defendant's pleading of its affirmative defense.

### 1. *Fraud vs. omission, incorrect statement or misrepresentation.*

First, plaintiff contends that the affirmative defense is insufficient because it only alleges that the "answer was fraudulent," whereas the jury found no fraud. In contrast, the statutory terms—omission, incorrect statement, and misrepresentation—which the jury did find, are not alleged.

"Fraud" or "fraudulent" are terms of uncertain meaning. They are conclusions that must be fleshed out by elaboration and by consideration of the context in which they are used. This is why Rule 9(b) requires that the circumstances constituting fraud "shall be stated with particularity," a requirement we have construed to require allegation of the substance of the acts constituting the alleged wrong. The Rule 9(b) requirement should not be understood as limited to allegations of common-law fraud. The purpose of that requirement dictates that it reach all circumstances where the pleader alleges the kind of misrepresentations, omissions, or other deceptions covered by the term "fraud" in its broadest dimension. Consequently, if the pleading had merely alleged that the insured had given "fraudulent" or "deceptive" or "misrepresenting" answers, it would have been insufficient.

In contrast, this affirmative defense recited a particular answer to a question involving alcoholism, and specifically alleged that this answer was fraudulent or material to the acceptance of the risk or the hazard assumed or that the defendant would not have issued the policy (at least not at that rate) "if the true facts had been made known ...." In the context of the statute paraphrased here, § 31–19–8, this allegation was sufficient and fair notice to put in issue all of the statutory defenses of deception, including the omission, incorrect statement, and misrepresentation ultimately found by the jury.[5]

### 2. *Alcoholism vs. excessive use of alcohol.*

Plaintiff next relies on the fact that the affirmative defense refers only to "treatment ... for alcoholism," whereas the jury found no deception in the insured's answer on alcoholism. In contrast, the pleading makes no reference to the insured's denial that he had been "treated for excessive use of alcohol," which the jury did find constituted an omission, an incorrect statement, and a misrepresentation.

We agree with the district court that the answer's reference to "treatment ... for alcoholism" was sufficient and fair notice to plaintiff that the general subject of treatment for "excessive use of alcohol" was in issue. Pleadings need not be as precisely phrased or as rigorously construed as special interrogatories. The fact that the jury was called upon to distinguish between the truthfulness of these two terms does not mean that the two must be distinguished for purposes of the general notice required to be communicated in the pleadings.

In the course of the trial, both parties elicited evidence or took positions to the effect that there are no concrete definitions of "alcoholic" or "alcoholism."[6] In view of the general nature of the term used in the pleadings, and in view of the liberalized pleading rules discussed earlier, we think the district court was clearly correct in ruling that defendant's pleading of misrepresentations about "alcoholism" permitted the introduction of evidence on misrepresenta-

---

**5.** *Pratt v. Board of Education, supra,* is not to the contrary. That case involved the effect of a defendant's omitting to allege any affirmative defense (including, particularly, plaintiff's failure to mitigate damages). In this case, defendant clearly alleged an affirmative defense, and the only issue is how broadly its allegation is to be construed.

**6.** The Uniform Alcoholism and Intoxication Treatment Act, § 2(1), 9 Uniform Laws Anno-

tated 63 (1979), adopted in thirteen states, includes in its definition of "alcoholic" a "person who habitually lacks self-control as to the use of alcoholic beverages ...." Utah statutes are not uniform in their use of the terms "alcoholism" or "alcoholics." *E.g.,* compare U.C.A., 1953, § 63–43–3(2) (apparently broad meaning) and § 78–4–7(j) (1981 Supp.) (less inclusive meaning).

tions concerning "excessive use of alcohol." The trial court followed the proper procedure in leaving the meaning of these terms and the question of misrepresentation to the jury. This is especially true since questions of material and prejudicial variance between pleadings and proof, 71 C.J.S. *Pleading* §§ 531–35 (1951), are peculiarly within the province of the trial court, and will be reversed only for abuse of discretion.

3. *Question 10 on the Life Application vs. Question 2.1. on the Medical History.*

■ Finally, plaintiff argues that the insured's statement that defeated recovery on the policy (Medical History question 2.1. on excessive use of alcohol) was not alleged in the answer, whereas the jury found that the statement alleged in the answer (Life Application question 10 on alcoholism) was not a misrepresentation.

It is evident from the earlier discussion that if the answer had alleged only that the insured's application for the policy misrepresented the facts concerning his treatment for "alcoholism" this would have been sufficiently specific to permit proof of misrepresentations concerning treatment for "excessive use of alcohol." But when the answer quotes a specific answer to a particular question on one form, does this preclude proof of another answer to a different question on a different form, when both answers are part of the application? In other words, where the pleadings are more specific than the rules require, must the latitude of proof be more narrowly confined than the rules contemplate?

No rule of law can answer that question. It is a matter to be resolved by the trial court under the groundrules of "fair notice" of the basis of the claim and opportunity to adjudicate, *Cheney v. Rucker, supra; Blackham v. Snelgrove, supra,* and under the more specific requirement that a charge of fraud must be supported by "sufficient particularity to show what facts are claimed to constitute such charges." *Heathman v. Hatch,* quoted *supra.*

Here, in response to plaintiff's vigorous and timely claims of prejudice in the admission of the Medical History form, the trial court found that there was no prejudice. For the following reasons, we find no abuse of discretion in that finding and that decision.

First, the question quoted in the answer and the question contained in the Medical History form were different characterizations of the same general course of conduct, alcohol abuse. Consequently, this is not a circumstance where an adversary would suffer prejudice as a result of preparing to litigate the factual circumstance alleged in the pleadings, only to face proof of another circumstance at trial. Defendant's pleading provided plaintiff with adequate notice of "what facts [were] claimed to constitute" its defense. The law requires no more.

Second, the defendant's intention to rely at least in part on the insured's answer on the Medical History form was also evident during discovery. Defendant provided plaintiff a copy of the Medical History form over seven months before trial. At about that same time, during defendant's taking of plaintiff's deposition, plaintiff was shown the Medical History form and questioned in detail about the insured's answer to question 2.1. on excessive use of alcohol.

For the reasons discussed above, we conclude that the affirmative defense of the insured's misrepresentation was properly pleaded and that the evidence thereof was properly admitted. The judgment on the verdict for defendant is therefore affirmed. Costs to respondent.

HALL, C.J., and STEWART, HOWE and DURHAM, JJ., concur.