Carroll JACKSON, Susan Hoggan, Parley R. Young, and Marylyn Taylor, individually and on behalf of all others similarly situated, Plaintiff,

v.

PHILIP MORRIS INC. (Philip Morris U.S.A.); Philip Morris Companies, Inc.; R.J. Reynolds Tobacco Company; RJR Nabisco Inc.; The American Tobacco Company; American Brands Inc.; Liggett & Meyers, Inc.; The

Brooke Group Limited; Liggett Group Inc.; Brown & Williamson Tobacco Corporation.; B.A.T. Industries, PLC; Batus Holdings Inc.; British American Tobacco Company, Ltd.; British-American Tobacco (Holdings) Ltd.; Lorillard Tobacco Co.; Loews Corporation; United States Tobacco Company; UST, Inc.; The Council for Tobacco Research–U.S.A. Inc. (Successor-in-interest to Tobacco Industry Research Committee); Tobacco Institute Inc.; Cuban Cigar Inc.; A.W. Marshall Co.; Core–Mark International, Inc.; and John Does 1–50, Defendants.

No. 2:98–CV–178B.

United States District Court,
D. Utah,
Central Division.

Dec. 8, 1998.

Richard Burbidge, Burbidge & Mitchell, Salt Lake City, UT, Stephen Mitchell, Salt Lake City, UT, Jason Boren, Salt Lake City, UT, Donald Winder, Salt Lake City, UT, Margaret Olson, Salt Lake City, UT, Gerry Holman, Salt Lake City, UT, for plaintiffs.

Brent Manning, Manning Curtis Bradshaw & Bednar LLC, Salt Lake City, UT, Alan C. Bradshaw, Salt Lake City, UT, Vincent Chang, New York City, Daniel Kolb, Davis Polk & Wardwell, New York City, D. Scott Wise, New York City, Jerome Doak, Jones, Day, Reavis & Pogue, Dallas, TX, Kevin Dorse, Jones, Day, Reavis & Pogue, Los Angeles, CA, Ricky Shackelford, Los Angeles, CA, Gordon L. Roberts, Parsons Behle & Latimer, Salt Lake City, UT, Daniel Hindert, Salt Lake City, UT, Richard Schneider, Atlanta, GA, Barry Goheen, Atlanta, GA, W. Bruce Wold, Sedgwick Detert Moran & Arnold, San Francisco, CA, Micki Singer, San Francisco, CA, Michael Zundel, Jardine Linebaugh & Dunn, Salt Lake City, UT, J. Scott Brown, Salt Lake City, UT, John Nyhan, Los Angeles, CA, Jay R. Henneberry, Chadbourne & Parke, Los Angeles, CA, R. Brent Stephens, Snow Christensen & Martineau, Salt Lake City, UT, Ryan Tibbitts, Salt Lake City, UT, Mark Cunha, New York City, Linda Mahoney, New York City, Ronald Newmann, New York City, Alan Sullivan, Snell & Wilmer LLP, Salt Lake City, UT, Gary Long, Shook Hardy & Bacon LLP, Kansas City, MO, John Sherk, Kansas City, MO, Anna McLean, San Francisco, CA, James Muehlberger, Shook Hardy & Bacon LLP, Kansas City, MO, Casey McGarvey, Salt Lake City, UT, Samuel Gaufin, Salt Lake City, UT, E. Scott Savage, Berman Gaufin Tomsic & Savage, Salt Lake City, UT, Gary Long, Kansas City, MO, John Sherk, III, Kansas City, MO, Peter Billings, Fabian & Clendenin, Salt Lake City, UT, Harry Zirlin, New York City, James Lowrie, Jones

Waldo Holbrook & McDonough, Salt Lake City, UT, James Stewart, Salt Lake City, UT, John Ashton, Prince Yeates & Geldzahler, Salt Lake City, UT, M. David Eckersley, Salt Lake City, UT, Michael Fay, New York City, Aaron Marks, New York City, Neil Kaplan, Clyde Snow Sessions & Swenson, Salt Lake City, UT, Paul Felt, Ray Quinney & Nebeker, Salt Lake City, UT, for defendants.

## MEMORANDUM OPINION AND ORDER

BENSON, District Judge.

### INTRODUCTION

This matter comes before the Court by way of plaintiffs' "Motion for Further Consideration to Vacate or Amend the Court's Memorandum Opinion and Order of June 17, 1998 or in the Alternative Motion for Leave to Amend Complaint as to Utah State Distributors" which was filed in response to the Court's denial of plaintiffs' motion to remand. The Court has been fully briefed by both sides and heard oral argument on October 20, 1998, and now renders the following decision.

### BACKGROUND

### I. Procedural Background

On February 13, 1998 the four named plaintiffs filed a complaint in the Third District Court of Salt Lake County, Utah, on behalf of themselves and a proposed class of plaintiffs including generally "all nicotine dependent persons who are residents of the State of Utah and who have purchased and smoked cigarettes designed, tested, manufactured, marketed, distributed or sold by the Defendants." (Pls' Compl. ¶ 19). The Complaint collectively names as "Defendants" seventeen manufacturers ("tobacco companies") and three distributors of tobacco products ("distributors"). All defendants are diverse except two of the three distributors which are Utah corporations.

Plaintiffs specifically allege claims of "deceptive sales practices, strict product liability, unjust enrichment, fraud, fraudulent concealment, negligent misrepresentation, negligence, breach of express and implied warranties, [and,] civil conspiracy." (*Id.* ¶ 8). Of these ten claims, only two are alleged against the distributors: (1) deceptive sales practices under the Utah Consumers Sales Practices Act ("UCSPA") and (2) strict product liability. Plaintiffs' petition for relief includes, "damages for ... personal injuries, economic losses, punitive and exemplary damages, equitable relief, disgorgement of profits, and the return of monies spent to purchase Defendants' manipulated and dangerously defective products...." (*Id.*).

On March 13, 1998, defendants removed the instant action to this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446, claiming that plaintiffs fraudulently joined the Utah distributors in order to defeat diversity. Plaintiffs moved to remand, arguing that complete diversity was lacking because they set forth colorable claims against in-state distributors. The distributors also moved to dismiss plaintiffs' claims against them for failure to state any viable claim for relief. On May 21, 1998, this Court heard oral argument on all pending motions.

On June 17, 1998, the Court issued its Amended Memorandum Opinion and Order denying plaintiffs' motion to remand and dismissing the distributors. Plaintiffs responded with the present motion for reconsideration and have requested that this Court vacate or amend its prior ruling. On October 20, 1998, the Court heard oral argument on plaintiffs' motion.

### II. Court's Prior Opinion Denying Plaintiffs' Motion to Remand

In its Amended Memorandum Opinion and Order dated June 17, 1998, this Court denied plaintiffs' motion to remand and granted distributors' motion to dismiss. Addressing plaintiffs' first claim against the distributors, brought under the UCSPA, this Court found that plaintiffs' consumer protection claim was really one of

personal injury and thus excluded from available actions under the Act. In addition, the Court held that plaintiffs' UCSPA claim failed because plaintiffs made only general allegations of fraud and deception on the part of the distributor defendants which is insufficient under the particularity requirement of Rule 9(b).

With respect to plaintiffs' strict product liability claim, the Court relied upon the reasoning of *Walls v. American Tobacco Co.*, 1997 U.S.Dist. LEXIS 11215 (N.D.Okla.1997) in which it was held that plaintiffs had failed to sufficiently allege that the wholesale distributors sold any product to the named plaintiffs. Consequently, this Court dismissed plaintiffs' strict product liability claim finding that plaintiffs failed to make any allegation that either of the named Utah distributors ever sold product to any of the four named plaintiffs.

### III. Standard of Review

██ When facing a claim that a defendant has been fraudulently joined, this Court must construe all ambiguities against the party seeking removal and resolve all doubts regarding the existence of federal jurisdiction in favor of remanding the action. It has long been the rule that the propriety of removal must be determined by looking at the record at the time the petition for removal is filed. *See Pullman Co. v. Jenkins*, 305 U.S. 534, 537, 59 S.Ct. 347, 83 L.Ed. 334 (1939). Specifically, the Court must make its determination by looking at the allegations contained in the complaint as it exists at the time of removal. Subsequent amendment cannot defeat removal. *Id.*

However, as the Tenth Circuit has noted, "it is well settled that upon allegations of fraudulent joinder designed to prevent removal, federal courts may look beyond the pleadings to determine if the joinder, although fair on its face, is a sham or fraudulent device to prevent removal." *Smoot v. Chicago, Rock Island and Pacific Railroad Co.*, 378 F.2d 879, 881–82 (10th Cir.1967). Indeed, the Tenth Circuit's opinion in *Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82 (10th Cir.1964), which provides additional guidance in this area, has become a frequently quoted and relied upon interpretation of fraudulent joinder analysis. In *Dodd* the court stated:

In many cases, removability can be determined by the original pleadings and normally the statement of a cause of action against the resident defendant will suffice to prevent removal. But upon specific allegations of fraudulent joinder *the court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available.* The joinder of a resident defendant against whom no cause of action is stated is patent sham, and though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists.

*Id.* at 85 (citations omitted) (emphasis added).

██ Many courts have placed substantial emphasis on the notion that "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants" then the matter must be remanded. *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440–41 (11th Cir.1983); *see also* 14A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3723, at 342–53 (2d ed.1985) (asserting that "there need be only a possibility that a right to relief exists to avoid" fraudulent joinder). However, this "benefit of the doubt" standard must be tempered by reason. Upon piercing the pleadings and considering the entire record, courts must make a determination as to whether there is any "reasonable basis in fact or colorable ground supporting the claim against the joined defendant." *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990). This analysis, therefore, requires a court to extract facts from the entire record and, construing them in the light most favorable to the

nonremoving party, apply controlling law to such facts to determine if the claims are legitimate or merely colorable.

## DISCUSSION

### I. Plaintiffs' Utah Consumer Sales Practices Act Claim

■ Plaintiffs allege in their first cause of action that all defendants (including the in-state distributors) engaged in deceptive sales practices in violation of Utah Code Annotated § 13–11–1 *et seq.,* the Utah Consumer Sales Practices Act. In its initial order and opinion, the Court found that plaintiffs' claim under the UCSPA was one for personal injury and therefore prohibited under § 13–11–22(1)(c) of the Act.[1] Plaintiffs have argued in both their initial motion to remand and the present motion that their claim is not solely one for personal injury, but also one for recision and restitution. This Court, however, found it unnecessary to scrutinize such arguments finding that not only is plaintiffs' UCSPA claim a personal injury claim, but it arises out of allegations of deception, false misrepresentations and omissions regarding the true health risks of cigarettes. The significance of this finding is that the claim must therefore comply with the specific pleading requirements under Rule 9(b) of both the Utah Rules of Civil Procedure and the Federal Rules of Civil Procedure. Rule 9(b) requires that allegations of fraud be pled with particularity. Plaintiffs' allegations of deceptive practices under the UCSPA fall within this category of "fraud" and are thus governed by Rule 9(b).

The law in Utah is clear on the reach of Rule 9(b). In *Williams v. State Farm Ins. Co.,* 656 P.2d 966, 972 (Utah 1982) the Utah Supreme Court conceded that "fraud" is a term of uncertain meaning which must be "fleshed out by elaboration and by consideration of the context in which they are used." It is because of the uncertainty in the meaning of "fraud" that Rule 9(b) "requires that the circumstances constituting fraud 'shall be stated with particularity.'" *Id.* As such, the court in *Williams* construed Rule 9(b) to require "allegation[s] of the substance of the acts constituting the alleged wrong." *Id.* The court interpreted Rule 9(b) to "reach all circumstances where the pleader alleges the kind of misrepresentations, omissions, or other deceptions covered by the term "fraud" in its broadest dimension." *Id.*

It is apparent to this Court, in light of *Williams,* that plaintiffs' allegations of misrepresentation and deception places its UCSPA claim within the Rule 9(b) categorization of fraud and therefore subject to the requirement of pleading with particularity. The Court found in its previous opinion and order that plaintiffs failed to allege with particularity acts constituting fraud on the part of the distributors. The Court maintains this position despite plaintiffs' motion for reconsideration. Plaintiffs, in their supporting briefs, do not raise any new issues which might cause the Court to reconsider its position. During oral argument, however, counsel for the plaintiffs suggested to the Court that because "the [UCSPA] speaks in terms of deception and in terms of misleading statements and in terms of deceit" and not in terms of fraud, the particularity requirement of Rule 9(b) does not apply and their UCSPA claim should be allowed to proceed. (Oral Arg. October 20, 1998 at 20–21). The Court cannot embrace this argument. It is clear, under *Williams,* that plaintiffs are bringing a claim that falls within the broad interpretation of fraud and therefore must be pled with particularity.[2] As such, even after piercing the

---

1. Section 13–11–22(1)(c) states that the UCSPA does not apply to a "claim for personal injury or death or claim for damage to property other than the property that is the subject of the consumer transaction."

2. It should be noted that upon being asked by the Court whether the UCSPA required a showing of scienter, counsel for the plaintiffs stated that "[t]here is not any case in Utah on the issue" and implied that because the Federal Trade Commission Act has no scienter

pleadings and looking at the entire record, the Court finds no grounds for reversing its earlier order and holds that plaintiffs have failed to state a claim under the UCSPA against the distributors.

## II. Plaintiffs' Strict Product Liability Claim

The heart of this motion for further consideration rests upon the question whether plaintiffs, in their allegations, have sufficiently placed the in-state distributors properly within the chain of distribution so as to enable themselves to bring a strict products liability claim against the distributors. Plaintiffs emphatically argue the adequacy of their strict products liability claim against the distributors.[3] In its simplest form, plaintiffs' arguments regarding its strict liability claim consist of the following: First, this Court dismissed plaintiffs' claim based on an erroneous finding that plaintiffs failed to allege that the distributors ever sold cigarettes to any of the named plaintiffs; and second, the Court's reliance upon the *Walls* decision for support of its dismissal was misplaced.

With respect to their first argument, plaintiffs assert that paragraphs 9 and 11 of their complaint sufficiently allege that the Utah distributors sold cigarettes to the named plaintiffs. Paragraph 9 states that "Plaintiffs and the Class members purchased the Defendants' products" and paragraph 11 states that "[t]he named Plaintiffs and Class members purchased and used cigarettes which were designed, manufactured, tested, marketed, distributed and/or sold by the Defendants...." Although not specifically identifying the distributors, plaintiffs argue that the word

"Defendants" used in these paragraphs means "all defendants, including the distributors" and not just the "Big Tobacco" companies. Such allegations, plaintiffs assert, are sufficient under the liberal pleading requirements of Rule 8. Regarding the Court's reliance on *Walls*, plaintiffs argue the complaint in *Walls* contained different allegations than the allegations in this case, which renders *Walls* unreliable. Plaintiffs assert that "[u]nlike the complaint in this case, *the plaintiffs' complaint in Walls contained no allegation of sale by the distributor defendants to the plaintiffs.*" (Pls' Mem.Supp. at 9).

Each of plaintiffs' arguments only further illustrate the need for this Court to pierce the pleadings and determine the factual basis for bringing a strict products liability claim against these distributors. Before addressing, however, the factual basis of plaintiffs' strict products liability claim, it must be noted that the Court affirms its reliance upon *Walls*. Plaintiffs are incorrect in their characterization of the complaint used in *Walls*. Having requested and received an actual copy of the complaint used in *Walls*, it is difficult to understand how the plaintiffs could have represented that the *Walls* complaint is different than the complaint here. In language virtually identical to the instant complaint, paragraph 4 of the *Walls* complaint reads "[t]he named Plaintiffs and numerous class members purchased cigarettes which were marketed, distributed and sold by the Defendants in the State of Oklahoma."

Setting the *Walls* decision aside, however, the very language utilized in plaintiffs' complaint here is at the very least ambiguous. As such, this Court remains faced

requirement, no scienter is required under the UCSPA. Such arguments do not help plaintiffs. Under § 13–11–4(2) of the Act, a supplier cannot be found to have committed a deceptive act or practice unless done knowingly or intentionally. Such scienter requirement only serves to bolster the need for broad application of Rule 9(b) when claims of deception are raised.

3. Counsel for the plaintiffs asserted in oral argument that this Court "committed error and it is fundamental error and it is elementary to the Court's jurisdiction of this case" and that the Court's findings were "absolutely false and absolutely erroneous." (Oral Arg. October 20, 1998 at 6–7).

with the task of piercing the pleadings and examining the entire record in order to determine whether plaintiffs had a sufficient basis for bringing a strict products liability claim against the in-state distributors.

### A. Piercing the Pleadings

■ By examining the entire record before it, the Court is not determining the likelihood of success on any given claim, but rather, whether plaintiffs had any sufficient basis for bringing its claim against these named Utah distributors. In other words, the Court must determine whether plaintiffs had a sufficient basis for alleging a causal connection between the four named plaintiffs and the Utah distributors such that the distributors can be recognized as being within the chain of distribution of an allegedly defective and unreasonably dangerous product. This is best done by looking at not only the complaint, but all other documents submitted by the parties as well as transcripts of oral argument. Therefore, the Court has carefully examined the record before it and, in order of value to the Court, makes findings of fact based upon plaintiffs' complaint, various affidavits, briefs, and representations made at oral argument. Ultimately, the Court is convinced that the following findings reveal that plaintiffs do not sufficiently allege, nor have, any basis to support a claim for strict products liability against the distributor defendants.

### 1. The Complaint

Plaintiffs' complaint contains ten causes of action. No claim is alleged against the distributors only. Instead, as indicated earlier, two of the ten claims are alleged against "all defendants" meaning the several "Big Tobacco" entities that make-up the tobacco industry and the three named

wholesale distributors. The general nature of plaintiffs' claim is that plaintiffs have been personally injured as a result of defendants' fraudulent, deceptive, concealed and wrongful conduct. (Pls' Compl. ¶¶ 1–8). As plaintiffs assert, "[t]his is a case of years of deceptive sales practices, misrepresentation, concealment, deceit, fraud and unjust enrichment against the tobacco Defendants." (Id. ¶ 1). The majority of plaintiffs' 228 paragraph complaint, therefore, is spent outlining the alleged years of deception and misrepresentation on the part of the "Big Tobacco Companies"[4] and the effect of such conduct on the plaintiffs.

Focusing specifically on relevant allegations made against the in-state distributors, and, with an eye towards finding a connection between the named plaintiffs and the in-state distributors, the Court finds that plaintiffs' complaint provides the following:

¶ 3 In a course of conduct spanning over 40 years, the Defendants have designed, tested, manufactured, marketed, distributed and/or sold cigarettes to the Class Plaintiffs and hundreds of thousands of citizens....

¶ 4 ... Defendants and each of them, have ... marketed and/or sold cigarettes to hundreds of thousands of citizens of Utah knowing, but denying, concealing and misrepresenting, that their cigarettes, when smoked, were highly injurious to the health of citizens of Utah....

¶ 5 ... Defendants and each of them, have ... marketed and/or sold cigarettes in which Utah children have been targeted as primary customers, knowing full well, but concealing and misrepresenting the fact that once a child becomes an addict to nicotine in

---

**4.** Plaintiffs, in their complaint, have chosen to divide the defendants into two categories: first, the Tobacco companies, the Tobacco Institute, Inc., and the Council for Tobacco Research U.S.A., Inc. all fall within the term "Big Tobacco Defendants," (Pls' Compl.

¶ 18j); second, each manufacturer defendant and distributors Cuban Cigar, Inc., A.W. Marshall Co., and Core–Mark International, Inc., have been referred to as "Distributor Defendants." (Pls' Compl. ¶ 18p).

cigarettes, such addiction would effectively preclude [them from choosing] to discontinue smoking Defendants' cigarettes thereafter.

¶ 9 .... Plaintiffs and the Class members purchased the Defendants' products in the State of Utah and were thereby damaged, injured and subjected to continuing harm as the result of Defendants' defective product and wrongful conduct.

¶ 11 The named Plaintiffs and Class members purchased and used cigarettes which were designed, manufactured, tested, marketed, distributed and/or sold by the Defendants in the State of Utah....

¶ 18m Defendants Cuban Cigar Inc. and A.W. Marshall Co. are Utah corporations ... and introduced into commerce various brands of defective and unreasonably dangerous cigarettes for sale and distribution within the State of Utah.

¶ 149 Defendants ... designed, manufactured, marketed, distributed or sold cigarettes to the Plaintiff Class.

¶ 150 The cigarettes designed, manufactured, marketed, distributed or sold by defendants were defective and unreasonably dangerous at the time they were sold by Defendants to the Plaintiff·Class.

(*Id.* ¶¶ 3, 4, 5, 9, 11, 18, 149, 150).

## 2. Affidavits

By way of affidavit, plaintiffs have sought, but fail, to aver the existence and sufficiency of their claims against the distributors. On May 20, 1998, Richard D. Burbidge and Robert S. Campbell, Jr., attorneys for the plaintiffs, submitted an affidavit in which they first point out that although no formal discovery has been done, they have "attempted to obtain information concerning the domiciliary of tobacco wholesalers and the brands purchased and sold by the Defendant Distributors as well as other wholesalers doing business in the state of Utah." (Burbidge and Campbell Aff. ¶ 3). Furthermore, plaintiffs argue in this affidavit that because the defendant distributors have not revealed which brands of cigarettes they buy and sell, plaintiffs are unable to determine to whom the distributors sell cigarettes. (*Id.* ¶ 7).

Following the Court's prior opinion and order denying plaintiffs' motion to remand, and in connection with the present Motion for Further Consideration, plaintiffs submitted a second affidavit on September 8, 1998. In this affidavit, Richard D. Burbidge states the following:

As counsel for the Plaintiffs, we have conducted a preliminary investigation without the benefit of formal discovery. Based upon that investigation, it is clear that not less than one of the Plaintiffs purchased cigarettes from retailers that were served by not less than one of the Utah defendant wholesales [sic]. Further, as counsel, we are confident that as the investigation continues and normal discovery is permitted, those additional links will be established. Nevertheless, there will be evidence of distribution by at least one of the wholesale distributors to at least one of the named Plaintiffs through a retail outlet.

(Burbidge Aff. ¶ 4).

## 3. Briefs and Oral Argument

In order to be thorough in the Court's examination of the record, the briefs submitted in support of and in opposition to plaintiffs' motion, as well as the transcripts of oral arguments have also been searched. Although representations made in the briefs or in oral argument are limited in their value, there are certain passages that shed light on the plaintiffs' claim against the distributors.

In their initial memorandum in support of remand, plaintiffs assert that they "have a strong and viable ... claim against the named tobacco distributors, including the Utah distributors, for the injuries caused by those defendants' sale of defective ciga-

rette products to plaintiffs." (Pls' Mem. Supp.Rem. at 21). Plaintiffs further state that their complaint "alleges that the plaintiffs and class members purchased and used cigarettes" sold by the Utah distributors which caused plaintiffs' injuries. (*Id.* at 22). Addressing defendants' argument that plaintiffs must specifically allege instances where the named plaintiffs purchased cigarettes from the named in-state distributors, plaintiffs make the following argument:

> It should be noted, of course, that implicit in Plaintiffs' claim is the allegation that they purchased products from the state distributors. More importantly, however, Plaintiffs have made clear their intent and purpose to renominate the Doe Defendants to include all of the state distributors who distributed tobacco products in the State of Utah. All tobacco products sold in the State of Utah must be sold through licensed state distributors.... [T]herefore, and upon determination of the true names and identities of the state distributors, all class Plaintiffs will have purchased and consumed cigarettes and tobacco products sold and distributed directly by the state distributor Defendants....

(Pls' Reply Mem.Supp.Rem. at 14).

Equally significant to this Court are several exchanges made during oral argument. During the first hearing on plaintiffs' motion to remand the following took place:

> Court: What support do you have for your allegations against the Utah distributors? What as attorneys did you have that you felt was enough to comply with Rule 11?

> Mr. Burbidge: What we had was this: we had confirmation from participants in the business that those three wholesalers wholesaled cigarettes ... in the State of Utah, that those products were hazardous and caused harm, and we'll prove that, and absent strict liability, absent the Consumer Sales Practices

Act we probably wouldn't have named them....

> ....

> Court: It seems like, and you correct me if this is wrong, it seems like all you have told me in that answer to my question is that these three distributors distributed cigarettes wholesale inside the State of Utah.

> Mr. Burbidge: Correct.

> ....

> Court: .... There is nothing specific to these distributors other than that they were distributors of those harmful products, right?

> Mr. Burbidge: Yeah.

> Court: That is all that you have got. You don't have any specific evidence about what these distributors knew or attempted to conceal in their own right, only that they were in the chain of custody, correct? Fair?

> Mr. Burbidge: I don't know that I would say chain of custody because they purchased and sold, but I think I get the Court's meaning and that is correct with respect to those allegations.

> ....

> Mr. Campbell: .... The retailers, Your Honor, that are before the Court, Cuban, A.W. Marshall and Core–Mark, they were to be perfectly candid, Your Honor, the only ones we knew about at the time that were engaged in substantial distribution. We knew there may be a couple of others, but our understanding was that at least 75 to 80 percent of the Utah market was controlled by these three state distributors.

> ....

> Court: .... You don't profess and quite candidly so, you don't profess to have any specific information about what these distributors did, do you?

> Mr. Campbell: Not at this point, no. We certainly don't. Except as I said that they have distributed the bulk of the cigarettes that have been sold in this state in the last 30 to 40 years.

Court: Mr. Burbidge was candid about it and said that is all we have that they are distributors of these harmful things. That is it. You don't have any information, at least I don't think you do, that they knew some information about nicotine addiction and suppressed it.

Mr. Campbell: Without discovery that is true, Judge.

(Oral Arg. May 21, 1998 at 16–18, 29, 39).

A second hearing was held on October 20, 1998 in which the plaintiffs argued this Court committed error in denying plaintiffs' motion to remand. Again, the Court inquired of plaintiffs the extent of the connection between the named in-state defendants and the four named plaintiffs:

The Court: How many are there? Are the three distributors that you have named here the only three distributors in the State of Utah?

Mr. Campbell: No. As far as we know that is not the case. There are more and they are Utah distributors as well.

The Court: How do you know you have—

Mr. Campbell: There are more and they are Utah distributors as well but we were not able to locate them and we were not able to define them at the time when the complaint was filed.

The Court: So just help me out here. How do you know that these distributors put the cigarettes in the hands of retailers who sold them to one of the four named plaintiffs?

Mr. Campbell: Because, your Honor, we have done our own investigation and it is very clear that these three wholesalers have their own trucks, their own semi-trucks, and they regularly and routinely visit either supermarkets, stores, cigarette machines, various dispensing retailers in the State of Utah.

The Court: How do you know that those dispensing retailers were visited by these four plaintiffs?

Mr. Campbell: We know that. In at least one or more cases we know that. Mr. Burbidge has a Rule 56(f) affidavit before the Court where we have stated specifically that. We have found out additional ones, Your Honor, but there is no question about the fact that these defendants have sold cigarettes in the State of Utah and these plaintiffs, the named plaintiffs have bought them. That is the allegation.

The Court: Well, I know but I just wondered how you got to the allegation.

Mr. Campbell: Your Honor, we have made our own investigation and I represent that to the Court .... Judge, the plaintiffs have bought cigarettes—These are chain smokers. They have bought cigarettes all over this valley and all over this state for 10, 20, 30, 40 years .... They have bought them at supermarkets, they have bought them at drug stores, they have bought them at cigarette shops or smoking pipe and tobacco stores, they have bought them in various machines, cigarette machines, and they have bought them in a variety of commercial settings.

In this particular instance we know for example that Susan Hogan the second named plaintiff bought cigarettes at a specific store, retail store and I think it is in the middle part of the valley around 5700 South in Salt Lake County, a place that is served by either Cuban Cigar or A.W. Marshall.

. . . .

Mr. Burbidge: .... The Court asked, well, do you have anything? It is pretty hard to find it out. So on our own we have confirmed that Susan Hogan purchased product from a Chevron, and I have it and it is part of the 56 affidavit. If we get a chance to do some discovery we'll prove the allegations.

. . . .

The Court: She got gas and cigarettes and then you have some informa-

tion that one of these distributors supplies to the Chevron?

Mr. Burbidge: No question, A.W. Marshall.

. . . .

Mr. Manning (attorney for defendant): . . . . There are 27 distributors licensed in this state. They have chosen three. Some distributors distribute different brands, some distributed over different periods of time, and we don't know any of that.

(Oral Arg. October 20, 1998 at 10–11, 25).

## B. Sufficiency of Plaintiffs' Claim Against the Distributors

■ Having pierced the pleadings, it is the opinion of this Court that the plaintiffs have failed to show any sufficient basis for bringing a strict products liability claim against these distributors. The Court has spent considerable effort trying to find in the record some basis for plaintiffs bringing a strict products liability claim against these Utah distributors, but has found nothing beyond speculation and conclusions of counsel. As such, there are distinct grounds for finding that the distributors have been improperly joined.

Foremost, when looking at the overall nature of plaintiffs' suit, it is apparent that this is a case against the "Big Tobacco" companies for deceptive and fraudulent conduct occurring over the last several decades. Under the heading "Nature of the Case" plaintiffs summarize their claim in the first paragraph of the complaint as follows:

This is a case of years of deceptive sales practices, misrepresentation, concealment, deceit, fraud and unjust enrichment against the tobacco Defendants and each of them, acting in conspiracy and individually, with respect to their advertising, distributing and sale of a highly addictive and toxic drug, nicotine, and a highly dangerous and defective product, cigarettes which kill and seriously injure citizens of Utah.

(Pls' Compl. ¶ 1). The vast majority of the 228 paragraph complaint is dedicated to outlining "over 40 years" of public deception, concealment, and misrepresentation regarding the health risks of smoking. However, plaintiffs have nothing by way of allegations, specific or otherwise, that the Utah distributors had any part in the deception of the public. Indeed, plaintiffs candidly admitted to this Court during oral argument that they had no "specific evidence about what these distributors knew or attempted to conceal in their own right" nor did they have "any information . . . that [these distributors] knew some information about nicotine addiction and suppressed it." (Oral Arg. May 21, 1998 at 39). Further, plaintiffs agreed that they could not "profess to have *any* specific information about what these distributors" have done. (*Id.*) (emphasis added). Indeed, as noted, only two of the ten causes of action are even arguably against the distributors. These two claims, which are captioned in the complaint as "Against All Defendants," do not contain even one specific allegation against the distributors, but instead generically refer to "defendants" as a whole. It appears to the Court that what plaintiffs have done is bring a claim against the tobacco industry and, in order to defeat federal jurisdiction, argued that two of the claims applied to the in-state distributors without having a sufficient basis to bring such claims. Nothing in the record appears to serve as an adequate basis in fact for suing these distributors.

Plaintiffs argue that under Utah strict products liability law they are allowed to sue a distributor that is within the chain of distribution and need only be concerned about complying with the requisite notice pleadings as required under Rule 8.[5] Fur-

---

5.   There has been, and continues to be, considerable debate by the parties involved in this litigation on the question of whether a pass-through distributor, such as the Utah distribu-

tors in this case, who merely sells to retailers products already packaged, can be sued under a strict products liability theory when the manufacturers of the product are named par-

ther, plaintiffs believe that, at the very least, paragraphs 9 and 11 of the complaint are sufficient to get them past removal. Plaintiffs are correct in their assertion that under Utah strict products liability law, a plaintiff may sue the distributor of an unreasonably dangerous product so long as the distributor is sufficiently placed within the chain of distribution of the product from the manufacturer to the ultimate consumer. However, the key is that plaintiffs must sufficiently establish that the distributor *is* indeed within *that* chain of distribution. Otherwise, the causal connection between the injured consumer and the distributor of an unreasonably dangerous product fails and as a matter of law such a distributor cannot be found liable.

■■■ It is clear to the Court that plaintiffs' complaint fails to sufficiently connect the in-state distributors to the four named plaintiffs.[6] Upon piercing the pleadings and examining the entire record, this Court cannot find any reasonable basis for plaintiffs bringing an action against the named distributors. Plaintiffs have been given ample opportunity, and were asked several times during oral argument to point out to the Court any information they had which would indicate that these distributors put cigarettes into the hands of retailers who sold them to one of the four named plaintiffs. Plaintiffs provided nothing of substance. The affidavit submitted by plaintiffs' counsel falls short of establishing any factually adequate basis for suing these distributors as opposed to any other in-state distributor.[7] Indeed, the affidavit merely alleges that "it is clear that not less than one of the Plaintiffs purchased cigarettes from retailers that were served by not less than one of the Utah defendant wholesales [sic]." (Burbidge Aff. ¶ 4). This affidavit and plaintiffs' counsel's statements at oral argument are devoid of any admissible or adequate factual foundation. This falls well short of establishing any "reasonable basis in fact or colorable ground supporting the claim against the joined defendant." *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990). Further, during the second hearing, plaintiffs attempted to be more specific with the Court when they stated that "[t]he Court asked, well, do you have anything? It is pretty hard to find it out. So on our own we have confirmed that

ties. As outlined below, the facts of this case do not require, and this Court is not inclined to render, an opinion resolving such question.

6. Plaintiffs argue that even if they have insufficiently alleged a connection between the in-state distributors and the named plaintiffs, that they are bringing a class action representing all smokers in Utah and as such, should be allowed to proceed despite no specific connection between these distributors and the named plaintiffs since logic dictates that the distributors in question are bound to have sold cigarettes which reached, at least, some members of the alleged class. In the alternative, plaintiffs argue that they can also mend any insufficiency by replacing its John Does with the names of those distributors who may have distributed to these plaintiffs. These arguments, however, are contrary to firmly established law. A court determining whether diversity jurisdiction exists can only look at the named plaintiffs and defendants. *See In re Amino Acid Lysine Antitrust Litigation*, 927 F.Supp. 273, 276 (N.D.Ill.1996) (Holding that "the firmly embedded rule of decision is that the determination of the two facets of diversity of citizenship—must be based solely on the identity of the name litigants, without reference to the unnamed members of the class or classes to which the name litigants belong."). With respect to fictitiously named defendants, 28 U.S.C. § 1441(a) makes it clear that "the citizenship of defendants sued under fictitious names shall be disregarded" when determining jurisdiction and, as noted above, subsequent amendment cannot defeat jurisdiction. *See Pullman Co. v. Jenkins*, 305 U.S. 534, 59 S.Ct. 347, 83 L.Ed. 334 (1939).

7. Plaintiffs concede that there are more distributors in Utah than just those named in their suit. Further, plaintiffs represented to the Court at the first hearing that "Cuban, A.W. Marshal and Core–Mark, they were, to be perfectly candid, Your Honor, the only [distributors] we knew about at the time...." (Oral Arg. May 21, 1998 at 29). Defendants argue that there are 27 known wholesale distributors of cigarettes in the state of Utah.

Susan Hogan [sic] purchased product from a Chevron" to which the Court inquired "[s]he got gas and cigarettes and then you have some information that one of these distributors supplies to the Chevron?" and plaintiffs counsel responded "[n]o question, A.W. Marshall." (Oral Arg. October 20, 1998 at 25). This too, however, falls well short of providing this Court with a sufficient basis establishing the requisite connection between a named distributor and a named plaintiff. Counsel was not under oath and there was no specificity as to how such a conclusion had been reached.

In the final analysis, it appears to this Court that plaintiffs have not only failed to properly allege in their complaint, but have no supporting basis in the record, that these distributors are in the chain of distribution of cigarettes from the manufacturers to the four named plaintiffs. A requirement to demonstrate this basic foundational evidence to the Court is not particularly onerous. All that is asked is that the plaintiffs demonstrate a simple causal connection between at least one of the four named plaintiffs and the two Utah distributors. An affidavit from a named plaintiff might have sufficed to meet this requirement, but no such affidavit, or its equivalent, has been submitted. As such, this Court finds the distributors to have been improperly joined and denies plaintiffs' motion for further consideration on remanding the action to state court.

### III. Dismissal of Distributor Defendants

■ In the Court's prior opinion and order, the distributor defendants were dismissed from the present action upon the Court's denial of plaintiffs' motion to remand and grant of distributor defendants' motion to dismiss for failure to state a claim upon which relief could be granted. Plaintiffs properly raise concern that they should be allowed to amend their complaint against the in-state distributors. The Court agrees with plaintiffs and acknowledges that the present decision is not *res judicata* as against the distributor defendants.[8] Leave to amend is granted.

### CONCLUSION

Plaintiffs' complaint fails to allege, and the record does not support, an adequate connection between the four named plaintiffs and the distributor defendants. The Court affirms that the distributors are improperly joined and DENIES plaintiffs' motion for remand brought by way of their Motion for Further Consideration to Vacate or Amend the Court's Memorandum Opinion and Order of June 17, 1998. The Court GRANTS plaintiffs' alternative Motion to Amend Complaint as to Utah State Distributors.

---

8. It must be noted, however, that amendment subsequent to the Court's denial of plaintiffs' motion to remand will not strip the Court of jurisdiction. Assuming a valid cause of action is alleged by plaintiffs in an amended complaint, this Court will exercise supplemental jurisdiction over plaintiffs' claims against the distributor defendants pursuant to 28 U.S.C. § 1367.