903 So.2d 769 (2004)
Billie PATTERSON
v.
LIBERTY NATIONAL LIFE INSURANCE COMPANY.
1030830.
Supreme Court of Alabama.
October 29, 2004.
Rehearing Denied December 17, 2004.
*770 Myron K. Allenstein and Rose Marie Allenstein of Allenstein & Allenstein, LLC, Gadsden, for appellant.
J. Banks Sewell III and Anne Sikes Hornsby of Lightfoot, Franklin & White, L.L.C., Birmingham, for appellee.
*771 LYONS, Justice.
Billie Patterson, the plaintiff below, appeals from a judgment entered on a jury verdict in favor of Liberty National Life Insurance Company. We reverse and remand.

I. Facts and Procedural History
In July 1999, Patterson purchased from Liberty National a $50,000 life insurance policy covering her son, Bruce Patterson ("Bruce"), and naming herself as beneficiary. On July 12, 1999, in connection with the policy, Bruce completed an insurance application. The application required that he answer a series of questions, including the following:
"5. During the past three (3) years, has the proposed insured been treated for, taken medication for, or been diagnosed as having:
"A. ... cirrhosis of the liver ...?
"....
"6. During the past three (3) years has the proposed insured:
"....
"B. Received treatment for alcohol abuse or been advised by a physician to reduce alcohol consumption?
"C. Used or received treatment or consultation for heroin, cocaine or other similar agent or narcotic drug?
"7. Is the proposed insured currently disabled due to accident or illness?; OR "Unable to perform the duties of his or her occupation due to accident or illness?"
(Capitalization in original.) Bruce answered all of these questions in the negative.
Bruce was killed in November 2000, and Patterson filed a claim for benefits under the Liberty National life insurance policy. Liberty National denied her claim in a letter dated June 21, 2001, on the basis of alleged misrepresentations contained in the insurance application. It cited two specific misrepresentations. Liberty National wrote:
"The application submitted in connection with [the policy] contained questions regarding the insurability of Bruce L. Patterson. Based on the answers contained in the application, this policy was issued with an effective date of August 1, 1999.
"[Liberty National], upon receiving notice of the death of Bruce L. Patterson, made its normal investigation. [Liberty National] received medical records which indicate that Bruce L. Patterson has been drawing Social Security Insurance Benefits for his disability since October, 1991. These records show Mr. Patterson was treated in the past for alcohol dependency, depression, and anxiety, and was prescribed numerous medications for treatment of these conditions. The records indicated that correct information was not disclosed on the application. Had the correct information been furnished, Bruce L. Patterson would not have been an acceptable risk under the rules of [Liberty National] for this policy and would not have been issued the policy.
"In view of this, it is the decision of [Liberty National] to deny your claim and refund all premiums paid on this policy."
Patterson sued Liberty National on August 10, 2001, alleging that she was entitled to benefits under the policy (breach of contract) and asserting a bad-faith-refusal-to-pay claim. Patterson later amended her complaint to include a fraudulent-suppression claim, alleging that Liberty National failed to disclose both the importance of truthfully answering the questions on the application and the consequences of making any misrepresentations. In its answers to the original and amended complaints, Liberty National denied Patterson's *772 averments, stated that it had violated no duty of disclosure, and set forth 31 other defenses, none of which referred to the alleged misrepresentations contained in the application.
In January 2004, both parties filed motions for a summary judgment. In its motion, Liberty National contended for the first time that Ala.Code 1975, § 27-14-7 gave it the right, based on the misrepresentations in the application, to avoid the policy. Section 27-14-7 provides:
"(a) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by, or in behalf of, the insured or annuitant shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:
"(1) Fraudulent;
"(2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
"(3) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.
"(b) No plea of misrepresentation or fraud in connection with the issuance of a life insurance policy or annuity contract shall be filed unless accompanied by a payment into court of all premiums paid on the policy or contract."
In her memorandum brief in support of her motion for a summary judgment and in opposition to Liberty National's motion, Patterson objected to the assertion of a defense provided by § 27-14-7. She argued that Liberty National had not affirmatively pleaded such a defense in its answer and that Rule 8(c), Ala. R. Civ. P., requires that a defense asserted pursuant to § 27-14-7 be affirmatively pleaded.
Neither Patterson's nor Liberty National's motion for a summary judgment was granted, and the case proceeded to trial.[1] At the conclusion of the evidence, Patterson moved for a judgment as a matter of law ("JML") pursuant to Rule 50(a), Ala. R. Civ. P., on the breach-of-contract claim based upon Liberty National's alleged waiver of the affirmative defense of misrepresentation. The trial court denied the motion. Liberty National moved for a JML with respect to Patterson's fraudulent-suppression claim; the trial court granted the motion. Patterson does not challenge on appeal the trial court's order granting Liberty National's motion. Over objection from Patterson based upon her previously stated contention that Liberty National had waived the defense provided in § 27-14-7, the trial court charged the jury on misrepresentation as a defense to Patterson's breach-of-contract claim. The trial court also overruled Patterson's objections to the charges on the bad-faith-refusal-to-pay claim and charged the jury on that issue. The jury found for Liberty National on the breach-of-contract claim; it therefore never reached the bad-faith-refusal-to-pay claim. The trial court entered a judgment for Liberty National. Patterson appealed without renewing her motion for a JML after the judgment was *773 entered and without moving for a new trial.

II. Patterson's Arguments on Appeal
On appeal, Patterson argues:
1) That misrepresentation pursuant to § 27-14-7 is an affirmative defense that must be pleaded pursuant to Rule 8(c), Ala. R. Civ. P. Therefore, Patterson says, the trial court erred in allowing Liberty National to offer evidence in support of that defense, in denying her motion for a summary judgment and her later motion for a JML, in charging the jury on misrepresentation, and in allowing Liberty National to argue the issue;
2) That for misrepresentation in an insurance application to constitute a valid defense to a claim based on a policy issued pursuant to that application, the application must contain the "required language to trigger the application of § 27-14-7(a)(3)." (Patterson's brief at 9). Therefore, according to Patterson, the trial court erred in allowing Liberty National to offer evidence in support of a defense based upon § 27-14-7 and in denying her motion for a summary judgment;
3) That Liberty National's agent was aware of Bruce's disability and his knowledge was imputed to Liberty National, and, says Patterson, any alleged misrepresentation on the insurance application was therefore not a valid defense. Consequently, Patterson says, the trial court erred in allowing Liberty National to offer evidence in support of that defense and in denying her motion for summary judgment;
4) That the misrepresentation allegedly relied upon by Liberty National as a defense was in response to an ambiguous question. Therefore, according to Patterson, the trial court erred by denying her motion for a summary judgment and by refusing to charge the jury that the question on the insurance application was ambiguous and that its import was for the jury to decide;
5) That Liberty National violated a continuing duty of good faith in that it refused to pay benefits after it learned that its agent had knowledge of Bruce's disability. Therefore, Patterson contends, the trial court erred in refusing to allow new evidence of bad faith on Liberty National's part and by refusing a jury charge on the existence of a continuing duty of good faith;[2]
6) That the court erred in failing to charge the jury to the effect that an insurer cannot use evidence obtained after it has denied benefits to justify that denial; and
7) That the court erred in failing to charge the jury to the effect that an insurer has a duty to gather all facts regarding a claim before deciding whether to grant or to deny the claim, i.e., that an insurer must conduct an adequate investigation of facts relevant to a denial of a claim.
For the reasons set forth below we do not reach all of these issues.

III. Availability of Appellate Review
Patterson asserts that the trial court erred in denying her motion for a summary judgment, in denying her motion for a JML, in instructing the jury, and in ruling on the admissibility of certain evidence.
Even if we treat the silence in the record regarding the disposition of Patterson's motion for a summary judgment as creating a presumption of its denial, *774 we cannot reach the question whether the trial court erred in denying the motion.[3] This case proceeded to trial, and appellate review of any alleged pretrial error in denying the motion for a summary judgment is precluded. See Mitchell v. Folmar & Assocs., LLP, 854 So.2d 1115, 1116 (Ala.2003)("[W]e do not review a trial court's denial of a summary-judgment motion following a trial on the merits.").
Neither do we address the denial of Patterson's motion for a JML, because she failed to renew that motion after the verdict was entered. See Johnny Spradlin Auto Parts, Inc. v. Cochran, 568 So.2d 738, 741 (Ala.1990)("An appellant who seeks reversal of an adverse judgment on the ground that there is insufficient evidence must meet a two-pronged test: he must have asked for a [JML] at the close of all the evidence, specifying `insufficiency of the evidence' as a ground, and he must have renewed this motion by way of a timely filed motion for [a JML] that again specified the same insufficiency-of-the-evidence ground." (emphasis added)). Stripping out the defense of misrepresentation would present the trial court with a question of the sufficiency of Liberty National's remaining evidence in opposition to Patterson's breach-of-contract claim. Cf. Barnes v. Dale, 530 So.2d 770, 777 (Ala. 1988), dealing with the defense of qualified immunity and holding that the precursor of a motion for a JML need not be renewed where a "pure question of law" is presented. We decline to apply Barnes to the instant case because of the presence here of the residual question as to the sufficiency of the evidence if the question of law as to the necessity to plead an affirmative defense is resolved in favor of Patterson.[4]
Patterson's failure to renew her motion for a JML or to move for a new trial does not preclude us from considering errors in the admission of evidence. Travis v. Hubbard, 267 Ala. 670, 673, 104 So.2d 712, 715 (1958). Likewise, adverse rulings on jury instructions do not require a motion for a new trial to preserve error. Mobile City Lines, Inc. v. Proctor, 272 Ala. 217, 226, 130 So.2d 388, 396 (1961).
Liberty National cites Johnston v. Frost, 547 So.2d 528 (Ala.1989), as support for its contention that a "`trial court may not be put in error for failure to rule on a matter which was not presented to it or decided by it.'" (Liberty National's brief at 47 (quoting Johnston, 547 So.2d at 529)). In Johnston, this Court refused to consider a defendant's argument that the trial court erred in denying his motion for a new trial based on insufficiency of the evidence because that ground was not argued in the motion for a new trial. Of course, this Court has repeatedly held that the loser after a jury trial cannot, on appeal, seek a new trial based on the verdict's being contrary to the weight of the evidence without having first moved for a new trial in the trial court. See, e.g., *775 Spiers v. Flowers, 572 So.2d 1269, 1270 (Ala.1990). In this case, we have refused to review the trial court's denial of Patterson's preverdict motion for a JML, also based on the insufficiency of the evidence, because Patterson failed to renew her motion for a JML after the verdict was entered, thereby never presenting to the trial court the question whether the verdict should be set aside and a judgment entered for Patterson.
This Court in Johnston also refused to consider an alleged defect in the form of the verdict, noting that the issue had never been previously raised in a motion for a new trial. Nothing in the opinion suggests that the issue had been previously raised in the trial court before the verdict was entered. We are not inclined to extend the holding in Johnston by assuming that the error had been previously asserted before the entry of the verdict, but simply omitted from the postjudgment motion for a new trial.
Johnston is not inconsistent with Travis v. Hubbard, supra, or Mobile City Lines, Inc. v. Proctor, supra, because those cases distinguish between reviewing matters upon which the trial court was never given the opportunity to rule, on the one hand, and reviewing rulings based on the admission of evidence and on the instruction of the jury, with respect to which the trial court had made adverse rulings, on the other.
Liberty National also cites Green v. Taylor, 437 So.2d 1259 (Ala.1983), for the proposition that "[f]ailure to make a motion [for a new trial] to [the] trial court preclude[s] [an] appellate court's review of plaintiff's contention that [the] trial court abused its discretion." (Liberty National's brief at 46). The trial court in Green had dismissed the case because the plaintiffs failed to appear for their depositions. On appeal, this Court refused to review the judgment of dismissal because the plaintiffs had not moved to set aside that judgment. Without a motion to set aside, the trial court was not afforded an opportunity to fully consider the position of the party against whom the judgment of dismissal was entered. See Green, 437 So.2d at 1261 (Torbert, C.J., concurring) ("The dismissal for failure to comply with the discovery rules occurred after something less than a full hearing. Failure of the appellants here to move to set aside the dismissal under Rule 60(b), [Ala.] R. Civ. P., prevents the trial court from correcting its decision and deprives this Court of a fully developed record from which to decide whether the trial court abused its discretion." (emphasis added)).
The fact that Liberty National failed to plead its defense of misrepresentation was repeatedly brought to the trial court's attention in the proceedings below. The concerns for "a fully developed record from which to decide whether the trial court abused its discretion" that animated our review of a dismissal for failure to appear at a deposition in Green are not here presented.
Because the authorities we rely uponTravis v. Hubbard and Mobile City Lines, Inc. v. Proctorpredate the adoption of the Alabama Rules of Civil Procedure, it is noteworthy that federal courts, governed by the analogous Federal Rules of Civil Procedure, generally have held that a motion for a new trial is not a prerequisite to appellate review of issues the trial court has previously decided adversely to the appellant. See Joseph T. Ryerson & Son, Inc. v. H.A. Crane & Bro., Inc., 417 F.2d 1263, 1271 n. 2 (3d Cir.1969) ("While it would have been desirable for the trial court to have had an opportunity to consider this alleged error [in the admission of hearsay evidence] on the motion for a new trial, appellant's failure to raise the claim at that time does not, of course, bar him *776 from asserting this ground on appeal provided objection to the evidence was made at trial. . . ."); United States v. Mountain State Fabricating Co., 282 F.2d 263, 265 (4th Cir.1960) (stating, in the context of alleged errors in excluding certain evidence and in instructing the jury, "failure to file [a motion for a new trial] does not forfeit the litigant's right to have reviewed on appeal questions which were properly reserved"); United States v. Cook, 432 F.2d 1093, 1101 (7th Cir.1970) ("Under federal procedure, it is not necessary to file a motion for a new trial in order to have reviewed on appeal questions properly preserved at trial."); Richardson v. Oldham, 12 F.3d 1373, 1377 (5th Cir.1994) ("Filing a Rule 59 [Fed.R.Civ.P.] motion [for a new trial] is not a prerequisite to taking an appeal . . . ." (footnote omitted)); Etienne v. Inter-County Sec. Corp., 173 F.3d 1372 (11th Cir.1999) (court refused to consider a sufficiency-of-the-evidence argument, but went on to address alleged errors in jury instructions even though no new-trial motion had been filed). See also C. Wright and A. Miller, Federal Practice & Procedure, Civil § 2540, p. 366, (2d ed. 1994) ("A renewed motion for judgment as a matter of law under Rule 50(b) is not a condition precedent to appeal from a final judgment. If there have been errors at the trial, duly objected to, dealing with matters other than the sufficiency of the evidence, they may be raised on appeal from the judgment even though there has not been either a renewed motion for judgment as a matter of law or a motion for a new trial, although it is better practice for the parties to give the trial court an opportunity to correct its errors in the first instance." (footnote omitted)).
In federal cases where a failure to file a new-trial motion has proven fatal, the appeals have typically been based upon the inadequacy or excessiveness of the damages awarded or upon the insufficiency of the evidence. See Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors, 850 F.2d 803, 811 (1st Cir.1988) ("[A] motion for new trial must be made in the first instance before the trial court, particularly where the weight of the evidence is at issue." (emphasis added)); Carlton v. H.C. Price Co., 640 F.2d 573, 577 (5th Cir.1981) ("`[T]here can be no appellate review (of allegedly excessive or inadequate damages) if the trial court was not given an opportunity to exercise its discretion on a motion for new trial.'" (quoting Baker v. Dillon, 389 F.2d 57, 58 (5th Cir.1968)) (emphasis added)); Ryen v. Owens, 446 F.2d 1333, 1334 (D.C.Cir.1971) ("The trial judge must . . . be given an opportunity to exercise his discretion. For this reason, a motion for a new trial must be made . . . if a party desires to attack on appeal a judgment... on the ground that the damages are inadequate." (emphasis added)); Baker v. Dillon, 389 F.2d 57, 58 (5th Cir.1968) (discussing appeal challenging amount of damages and holding that a motion for a new trial is required before the trial court can exercise its discretion); Etienne v. Inter-County Sec. Corp., supra (court refused to consider a sufficiency-of-the-evidence argument, but went on to address alleged errors in jury instructions even though no new-trial motion had been filed). This result is similar to the holdings in our cases. See Spiers v. Flowers, supra.
We base our remand in this proceeding not on the sufficiency of the evidence, but on errors in the admission of evidence and in the refusal of jury charges. Both of these issues were sufficiently presented to the trial court and were decided adversely to Patterson. Patterson is therefore not precluded by reason of her failure to file a postverdict motion for a JML and a motion for a new trial from urging this Court to reverse the trial court's judgment and remand the case based on the issues related to Liberty National's defense arising *777 out of the alleged misrepresentations on the insurance application.
While Patterson's original brief in this Court does not expressly request a remand of her case for further proceedings as an alternative to the entry of a summary judgment or a JML, she does state issues and present argument that the trial court erroneously instructed the jury as to the effect of the alleged misrepresentations in the insurance application and erroneously permitted Liberty National to argue the issue. In a paragraph in the conclusion in her brief, separate from an earlier paragraph seeking the reversal of what we have presumed to be a denial of her motion for a summary judgment, Patterson refers to errors in charging the jury on a defense related to misrepresentation. Those assertions of error inherently embrace relief in the form of a remand of the case for further proceedings. Indeed, in its brief Liberty National recognizes that "an incorrect, misleading, erroneous, or prejudicial charge may form the basis for granting a new trial."
Taken as a whole, Patterson's brief sufficiently seeks remand as an alternative to a JML in the context of Patterson's claim that the trial court erred in permitting Liberty National to assert a defense of misrepresentation. This Court can therefore consider whether to reverse the judgment and remand the case for further proceedings on the breach-of-contract claim as an alternative to relief in the form of reversal of the judgment and remand with instructions to enter judgment for Patterson, which relief, for the reasons previously stated, is unavailable to her.

IV. Analysis

A. Overview
The remaining issues include Patterson's contention as to erroneous jury instructions and improper receipt of evidence concerning the misrepresentations on the insurance application. Because we reverse and remand on this issue, we pretermit consideration of all other issues that might arise only in the event that further proceedings in the trial court necessitate a new trial.

B. Admissibility of Evidence of Misrepresentation Defense Based on § 27-14-7
Patterson argues that Liberty National was required to plead affirmatively its defense under § 27-14-7, Ala.Code 1975. Rule 8(c), Ala. R. Civ. P., provides, "[i]n pleading to a preceding pleading, a party shall set forth affirmatively [various listed affirmative defenses]." Rule 8(c) lists several affirmative defenses, including "fraud. . . and any other matter constituting an avoidance or affirmative defense." The Committee Comments on 1973 Adoption to Rule 8 state, in relevant part, "[t]he affirmative defenses listed in Rule 8(c) are only a partial list of defenses which should be set forth affirmatively and the rule provides that any `matter constituting an avoidance or affirmative defense' must be pleaded."
Typically, if a party fails to plead an affirmative defense, that defense is waived. Ex parte Liberty Nat'l Life Ins. Co., 858 So.2d 950, 953 (Ala.2003). This Court has never decided whether a defense of misrepresentation under § 27-14-7 is an affirmative defense subject to Rule 8(c), and therefore waived if not pleaded.
While this Court has never expressly held that a defense based upon a misrepresentation under § 27-14-7 is an affirmative defense, our precedent establishes a clear pattern of treating such misrepresentation as an affirmative defense by an insurer/defendant. See Bush v. Alabama Farm Bureau Mut. Cas. Ins. Co., 576 So.2d 175, 176-77 (Ala.1991) ("[Insurer] asserted [the following] affirmative defenses to the counterclaim: that the [insureds] *778 . . . intentionally misrepresented or concealed material facts in their sworn proof of loss statement; and . . . made material misrepresentations of fact in the application for insurance. . . ."); Great Southwest Fire Ins. Co. v. Stone, 402 So.2d 899, 899 (Ala.1981) (stating the issue as whether it was "error for the trial court to grant an insured's motion for a[JML] as to his insurer's affirmative defenses of arson, willful concealment of facts, or misrepresentation"); Unionmutual Stock Life Ins. Co. v. Wilkerson, 367 So.2d 964, 966-67 (Ala.Civ. App.1978) ("Defendant's answer to the complaint . . . raised several affirmative defenses which, in essence, asserted that coverage under the disability insurance policy had been extended to [the plaintiff] on the basis of misrepresentations made in his insurance application.").
Other states have held that misrepresentation in the context of an insurance application is an affirmative defense to an action based on an insurance policy. American Family Life Assurance Co. v. Reeves, 248 Ark. 1303, 455 S.W.2d 932 (1970), involved alleged misrepresentations on a health-insurance application. The insurance company refused to pay a claim submitted on the policy, and the insured sued. The insurance company raised the misrepresentations on the application as a defense. The relevant Arkansas statute was nearly identical to § 27-14-7, and it set forth the same three possible methods of avoiding an insurance contract based on misrepresentation. The Arkansas Supreme Court held that the three defenses contained in the statute were "affirmative defenses which the insurer must plead and prove by a preponderance of the evidence if it is to prevail." 248 Ark. at 1306, 455 S.W.2d at 935.
In Williams v. State Farm Insurance Co., 656 P.2d 966 (Utah 1982), the Utah Supreme Court dealt with the issue whether a defense under U.C.A.1953, § 31-19-8, had to be pleaded as an affirmative defense. When that case was decided, the Utah statute provided three ways an insurer could, as a consequence of misrepresentations by the insured on an application, avoid liability under an insurance policy. The three alternatives were very similar to those found in § 27-14-7.[5]
The court in Williams applied Utah's version of Rule 8(c) to the statute in question and held that the defendant insurance company had sufficiently pleaded its affirmative defenses under the Utah statute. The defendant had complied by stating in its pleading that the plaintiff's answer to a question on the insurance application was fraudulent and by including in its pleading both the question appearing on the application and the plaintiff's answer to that question.
In Brooks v. Town & Country Mutual Insurance Co., 294 Ark. 173, 741 S.W.2d 264 (1987), the plaintiff was the beneficiary of an insurance policy that covered the loss of her house in the event of fire. After her house burned, the insurance company refused to pay the claim, and the insured sued. The defendant failed to raise the defense of misrepresentation in its pleadings, but the trial court nevertheless ruled in its favor. On appeal, the Arkansas Supreme Court held that misrepresentation is an affirmative defense. It further held that because the defendant never amended *779 its pleadings to assert that defense and the plaintiff never consented to trial of that issue, it was error for the trial court to allow the insurance company to argue the defense. 294 Ark. at 175, 741 S.W.2d at 265. See also DiDonna v. State Farm Mut. Auto. Ins. Co., 259 A.D.2d 727, 728, 687 N.Y.S.2d 175, 175-76 (1999) ("[T]he defendant may assert, as affirmative defenses, that the plaintiff's alleged material misrepresentations fraud [sic] in obtaining the subject policy precludes her recovery under the policy."); Insurance Co. of North America v. Kaplun, 274 A.D.2d 293, 298-99, 713 N.Y.S.2d 214, 218 (2000) ("When the insured brings an action to recover benefits under a policy, the insurance carrier may assert as an affirmative defense that the insured's misrepresentations and/or fraud in obtaining the policy precludes any recovery by the insured."); Metropolitan Prop. & Cas. Ins. Co. v. Dillard, 126 N.C.App. 795, 799, 487 S.E.2d 157, 160 (1997) ("The insurance company has the burden of proving misrepresentation which is an affirmative defense to the enforcement of an insurance contract."); Queen City Farms, Inc. v. Central Nat'l Ins. Co., 126 Wash.2d 50, 97, 882 P.2d 703, 728 (1994) ("Since misrepresentation is an affirmative defense, the burden of proof is on defendant [insurance company].").
This Court has defined an affirmative defense as a defense that raises a new matter and that would be a defense even if the relevant allegations in the plaintiff's complaint were true. Bechtel v. Crown Cent. Petroleum Corp., 451 So.2d 793, 795 (Ala.1984). In the instant case, Liberty National contends that Bruce made certain misrepresentations in his insurance application. The defense, if proven, allows Liberty National to avoid the policy under § 27-14-7.[6] Because the statute, when applicable, makes an insurance policy voidable at the option of the insurer, it constitutes an affirmative defense to a claim based on the breach of an existing insurance contract. A defense of misrepresentation under § 27-14-7 is an "argument[] that, if true, will defeat the plaintiff's . . . claim, even if the allegations in the complaint are true." Black's Law Dictionary 451 (8th ed.2004). In other words, if successful, the defense will allow Liberty National to avoid an otherwise valid insurance contract.
Based on the foregoing caselaw and analysis, we conclude that a defense of misrepresentation under § 27-14-7, Ala. Code 1975, is an affirmative defense that is waived if not properly pleaded.
Liberty National states that § 27-14-7 is considered a part of every insurance contract entered into in Alabama. Liberty National also contends that it did indeed affirmatively plead its defense of misrepresentation. It cites two pages of its original answer, but it does not refer to any specific defenses listed in that answer.[7]
We have no obligation to ferret out which of the 10 defenses set forth on those 2 pages of the answer might form the basis for Liberty National's argument that it did plead the defense of misrepresentation. See Totten v. Lighting & Supply, *780 Inc., 507 So.2d 502, 503 (Ala.1987) ("[T]his Court is not under a duty to search the record in order to ascertain whether it contains evidence that will sustain a contention made by either party to an appeal."). Nevertheless, we have a duty to affirm the judgment if the trial court is correct for any reason. See Ex parte CTB, Inc., 782 So.2d 188, 191 (Ala. 2000)("[T]his Court must affirm the judgment of the trial court if that judgment is supported by any valid legal ground, even if that ground was not argued before the trial court or this Court.").
Perhaps, by its nonspecific reference to 2 pages of its answer containing 10 defenses, Liberty National is inviting our attention to defense no. 10 ("Defendant has complied with all relevant federal and state requirements regarding the transaction that is the subject of this lawsuit") and defense no. 30 ("The plaintiff's alleged losses are subject to and barred by all of the terms and conditions of the policy or policies of insurance made the basis of this lawsuit.").
Taking the latter first, defense no. 30 avers that the insured's failure to comply with conditions of the policy precludes Patterson's recovery. Viewed in that context, the conclusory allegations of defense no. 30 run afoul of the last sentence of Rule 9(c), Ala. R. Civ. P., which states, "[a] denial of performance or occurrence [of conditions precedent] shall be made specifically and with particularity." (Emphasis added.)
Moreover, regardless of whether § 27-14-7 is a part of every insurance contract entered into in Alabama, as Liberty National contends, that circumstance does not change the affirmative nature of the defense of misrepresentation, a defense that allows an insurer to avoid an otherwise valid contract. Further, Liberty National's contention that § 27-14-7 is a part of every insurance contract goes too far, as § 27-14-7(b), in addressing how the defense is asserted and the conditions applicable to the defense, provides: "No plea of misrepresentation or fraud in connection with the issuance of a life insurance policy or annuity contract shall be filed unless accompanied by a payment into court of all premiums paid on the policy or contract." (Emphasis added.) On this rationale, the contract, by incorporating § 27-14-7(b), provides the insured with the contractual right to insist that such a defense can be asserted only if a plea is filed.
In the same respect, to the extent that Liberty National's defense no. 10, averring compliance with "all relevant . . . state requirements," constitutes a defense to the allegations of the complaint, it is contradicted by the omission in Liberty National's answer of a plea asserting the defense of misrepresentation or fraud, contrary to § 27-14-7(b), which is itself a "state requirement regarding the transaction that is the subject of this lawsuit." In any event, the point of Rule 8(c) is to give a party notice of affirmative defenses expected to be raised during litigation, and Liberty National's stated defenses simply did not do that.
Because Liberty National failed to plead affirmatively its defense of misrepresentation pursuant to § 27-14-7, that defense was waived, and unless the harmless-error rule, as Liberty National also urges, saves it from the consequences of its waiver, any evidence of the defense was inadmissible

C. Harmless Error
Notwithstanding Patterson's contention that misrepresentation under § 27-14-7 is an affirmative defense that Liberty National waived by not asserting, Liberty National argues that it was harmless error for the trial court to allow the defense and to admit evidence in support of the defense and, as is relevant to the only relief available in the present posture of this proceeding, to instruct the jury based on its defense of misrepresentation. *781 Liberty National claims that Patterson was on notice that the defense of misrepresentation under § 27-14-7 would be argued at trial. The notice is allegedly based on Liberty National's discovery requests, along with the letter from Liberty National to Patterson dated June 21, 2001.
In that letter, Liberty National informed Patterson that her claim was being denied because Bruce had responded inaccurately to questions on the insurance application. The letter states, in relevant part, "Bruce L. Patterson has been drawing Social Security Insurance Benefits for his disability since October, 1991 ...." and "records show Mr. Patterson was treated in the past for alcohol dependency...." Liberty National claims that Patterson therefore had notice of its proposed defense of misrepresentation and that she was not prejudiced by its failure to plead such defense affirmatively.
In response, Patterson argues that the harmless-error rule does not apply in the context of an unpleaded affirmative defense. Our research has revealed no Alabama cases in which an objecting party's notice of an affirmative defense excused a failure to plead the defense. Although there are cases that have recognized the mandatory nature of Rule 8(c), those cases do not discuss the applicability of the harmless-error rule. See Bechtel v. Crown Cent. Petroleum Corp.; Wallace v. Alabama Ass'n of Classified Sch. Employees, 463 So.2d 135, 136-37 (Ala.1984) ("Once an answer is filed, if an affirmative defense is not pleaded, it is waived. The defense may be revived if the adverse party offers no objection; or if the party who should have pleaded it is allowed to amend his pleading; or if the defense appears on the face of the complaint." (citations omitted)). Liberty National has not cited any Alabama case in which a trial court's allowance of an unpleaded affirmative defense was held to be harmless error.
Federal cases are divided on whether the harmless-error rule should apply to the failure to plead an affirmative defense. Compare Grant v. Preferred Research, Inc., 885 F.2d 795, 797 (11th Cir.1989) ("[I]f a plaintiff receives notice of an affirmative defense by some means other than pleadings, `the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice.' When there is no prejudice, the trial court does not err by hearing evidence on the issue." (citation omitted)), with the minority view expressed in Harris v. Secretary, United States Dep't of Veterans Affairs, 126 F.3d 339, 345 (D.C.Cir.1997) ("On its face and on its logic, Rule 8(c) [Fed.R.Civ.P.] requires that a party actually plead its affirmative defenses, not that it plead them only in those cases where failure to plead would result in prejudice to the opposing party.").
Because we conclude that the failure to plead the affirmative defense of misrepresentation was not harmless error in the instant case, it is unnecessary for us to decide whether Bechtel and its progeny foreclose a harmless-error exception to the waiver-of-affirmative-defense rule. In other words, even if we were to recognize a harmless-error or notice exception to the waiver-of-affirmative-defense rule, it would not apply here.
Rule 9(b), Ala. R. Civ. P., requires that fraud be pleaded with particularity. Under Rule 9(b), Fed.R.Civ.P., which is identical to the Alabama rule in pertinent part, the requirements of pleading fraud "with particularity" apply to fraud when pleaded as an affirmative defense under Fed. R.Civ.P. 8(c). See Wright and Miller, Federal Practice and Procedure § 1297 ("Finally, Rule 9(b) cannot be confined to a claim for relief based on fraud appearing in the original complaint. Inasmuch as the defense of fraud cannot be raised in an answer under a general denial because *782 Rule 8(c) requires that defense to be pleaded affirmatively, the assertion of such a defense is an `averment of fraud' and is subject to the heightened pleading requirements of Rule 9(b)."). See generally Williams v. State Farm Ins. Co., 656 P.2d at 972 (holding Utah's version of rule 9(b) applicable to pleading a defense of misrepresentation on an insurance application). The Utah Court in Williams held:
"Consequently, if the pleading had merely alleged that the insured had given `fraudulent' or `deceptive' or `misrepresenting' answers, it would have been insufficient.
"In contrast, this affirmative defense recited a particular answer to a question involving alcoholism, and specifically alleged that this answer was fraudulent or material to the acceptance of the risk or the hazard assumed or that the defendant would not have issued the policy (at least not at that rate) `if the true facts had been made known....'"
656 P.2d at 972.
Any notice provided by the combination of Liberty National's discovery requests, its pre-lawsuit letter to Patterson, and its motion for a summary judgment would be insufficient, under a harmless-error analysis, to save Liberty National from the consequences of its failure to plead misrepresentation as an affirmative defense on all of the issues of misrepresentation tried in this case.[8] The only misrepresentation raised in Liberty National's motion for a summary judgment was Bruce's misrepresentation in answering the question dealing with disability. While the motion did reproduce other questions from the application, it did not assert any factual matter showing that answers to those questions were incorrect. While Liberty National's letter to Patterson cited a possible misrepresentation dealing with Bruce's past treatment for alcohol abuse, that misrepresentation was not even addressed in Liberty National's motion for a summary judgment (other than that the question was simply reproduced).
Nevertheless, over objection from Patterson, Liberty National offered at trial evidence of misrepresentations dealing with alleged erroneous answers concerning treatment for cirrhosis of the liver and drug addiction, and again, over objection from Patterson, the trial court charged the jury on misrepresentations in the insurance application as an affirmative defense to an action under the policy. Those defenses were not disclosed in either the pre-lawsuit letter or the motion for a summary *783 judgment. Patterson was thus not put on sufficient notice of Liberty National's affirmative defense with respect to the issues introduced after the motion for a summary judgment and for the first time at trial; therefore, error in the admission of evidence of alleged erroneous answers concerning treatment for cirrhosis of the liver and drug addiction is not harmless, even if we were to determine that our caselaw permits a harmless-error exception to the general rule that affirmative defenses are waived if not pleaded.[9]
It is true that documents that revealed to Liberty National the additional alleged misrepresentations contained in the insurance application were not obtained by Liberty National until just before trial. But because Liberty National did not move to amend its answer pursuant to Rule 15, Ala. R. Civ. P., the discretion given the trial court by that rule was not invoked. If Liberty National had moved to amend, the record would more clearly show the relative positions of both parties with respect to why the pleadings should or should not be amended. For example, Liberty National could then have made a record of why it could not have previously obtained the records relating to cirrhosis of the liver and drug addiction through due diligence in the previous two years and four months during which the action was pending, and Patterson could have made a record of why she declined to execute a release of those records pursuant to a request by Liberty National, apparently for the first time, approximately one month before the trial. Liberty National could have then explained how long it had those records before the trial and when it decided to use them as a basis for additional grounds of misrepresentation beyond those previously relied upon in its motion for a summary judgment. While the trial court may have substantial discretion in allowing amendments to pleadings and in the admission of evidence, it has no discretion to admit evidence of unpleaded affirmative defenses.[10] Assuming that Patterson is responsible for Liberty National's delay in setting forth its defenses  and on this record we cannot make such a finding [11] we cannot fault Patterson for failing to show how she would be *784 prejudiced by an amendment to the pleadings when no motion to amend was ever filed by Liberty National. It was Liberty National's responsibility to invoke the discretion of the trial court pursuant to Rule 15, and it failed to do so.[12]
Without deciding whether a harmless-error exception can ever apply in the context of an unpleaded affirmative defense, we hold in this case that the trial court's instructions to the jury, over Patterson's objection, to the effect that Liberty National could avoid the insurance contract based on the misrepresentations made on the insurance application under the circumstances here presented is reversible error.

V. Conclusion
The judgment in favor of Liberty National is reversed and the cause is remanded for further proceedings other than entry of judgment as a matter of law in favor of Patterson based only on the evidence at trial, because a postverdict renewal of Patterson's motion for a JML would be untimely. See Rule 50(b), Ala. R. Civ. P.[13] We pretermit consideration of whether error occurred in connection with the sufficiency of the policy language, the existence of an ambiguity in the application, and the impact of the agent's knowledge at the time the application was taken. Those issues would become ripe again only if, after remand, Liberty National obtains leave of court pursuant to Rule 15 to amend its answer asserting affirmative defenses related to misrepresentation. We also pretermit consideration of issues related to the bad-faith-failure-to-pay claim (i.e., continuing duty of good faith, admissibility of evidence) because these issues *785 would become ripe only if Patterson obtains a judgment on the breach-of-contract claim, an event that has not yet occurred.
REVERSED AND REMANDED.
HOUSTON, SEE, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
NABERS, C.J., dissents.
NABERS, Chief Justice (dissenting).
I respectfully dissent.
I agree with the majority that the alleged misrepresentations made by Bruce Patterson during the application process preceding the issuance of the life insurance policy by Liberty National, when asserted by Liberty National pursuant to Ala.Code 1975, § 27-14-7, constitute an affirmative defense under Rule 8(c), Ala.R.Civ.P., to Billie Patterson's action alleging breach of contract and bad-faith refusal of pay. I differ from the majority in that I have concluded that the failure to assert this affirmative defense, given the circumstances of this case, should be excused under a harmless-error rationale.
Liberty National's basic defense on the merits of the breach-of-contract claim was misrepresentation, which, if proven, would allow Liberty National to avoid liability under the policy under § 27-14-7.
This was made clear to Billie Patterson as early as June 2001, when she received Liberty National's letter denying her claim.[14] During discovery, Liberty National produced its claim file; that file showed clearly with some specificity the thought process that resulted in the claim's being denied. So did the deposition of Liberty National's claims officer.
As the majority opinion states, this Court has not adopted the harmless-error rule in the context of an affirmative defense under Rule 8(c). There is, however, substantial authority in the federal courts to permit the application of the rule in such a context, and I think it would be appropriate to apply the harmless-error rule in this case.[15]
As the majority opinion points out, on the eve of the trial Liberty National discovered new documents that may have provided additional grounds for denying the payment of Patterson's claim other than the ground asserted by Liberty National's claims officer in his deposition. In his deposition, the claims officer stated that the reason the claim was denied was *786 the failure of the insured to state in the application that he was disabled in response to a specific question on disability. The newly discovered documents indicated incorrect answers in the application relating to alcohol problems and cirrhosis of the liver. Over Patterson's objections, those documents were admitted.
I would defer to the trial court's discretion in allowing those documents to be admitted. The trial court, better than this Court, is able to determine whether the admission of this evidence unfairly surprised and prejudiced Patterson, and I do not think the trial judge exceeded his discretion in admitting them. Therefore, I would affirm.
NOTES
[1] We are unable to find in the record an order of the trial court ruling upon either motion for a summary judgment. Because the case proceeded to trial, we treat the motions as having been denied.
[2] In her original brief to this Court, Patterson also argued that the trial court erred in not admitting evidence of Liberty National's underwriting practices. She later withdrew that argument in her reply to Liberty National's appellee brief.
[3] While Liberty National has not called our attention to this as a basis for affirming the trial court's judgment, this Court cannot avoid its obligation to affirm a trial court's judgment when it is appropriate to do so because a litigant has miscalculated the applicability of the appropriate rule of law. Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949 (Ala.2004).
[4] Liberty National has not relied on Patterson's procedural default in failing to renew her motion for a JML after the entry of the verdict. Perhaps its decision to do so was based upon an excessively broad reading of Barnes v. Dale. Nevertheless, our obligation to affirm the judgment of the trial court, discussed at note 3, supra, requires the application of the rule of preclusion. For a discussion of the absence of any difference in the disposition of this case even if we were to apply the exception noted in Barnes see note 13, infra.
[5] According to Williams, the Utah Code provided that "omissions, incorrect statements, or misrepresentations `shall not prevent a recovery under the policy' unless they are (a) fraudulent, or (b) material either to the acceptance of the risk or to the hazard insured, or (c) the insurer would not have issued the policy if it had known the true facts." 656 P.2d at 969. U.C.A.1953, § 31-19-8, has since been repealed and replaced by § 31A-21-105.
[6] See Duren v. Northwestern Nat'l Life Ins. Co., 581 So.2d 810, 813 (Ala.1991) ("[Defendant insurer] was entitled to void the policy if [the insured] made even an innocent misrepresentation of the kind specified in § 27-14-7. . ."); Amerson v. Gardner, 681 So.2d 570, 572-73 (Ala.Civ.App.1996) ("[A]n insurer may void an insurance policy based on a misrepresentation in the insurance application...."); Brown v. American Gen. Life & Acc. Ins. Co., 680 So.2d 334, 336 (Ala.Civ.App.1996) ("[T]he dispositive issue is whether the policy was, in fact, a voidable policy, pursuant to Ala.Code 1975 § 27-14-7.").
[7] Liberty National also filed answers to Patterson's two amended complaints, but it failed to affirmatively plead the defense of misrepresentation on the insurance application in those answers as well.
[8] It is not necessary in this case to decide whether a pre-suit letter informing an insured of the insurer's basis for avoiding an insurance policy can ever serve as the basis for harmless error in connection with the failure to plead an affirmative defense of misrepresentation. The letter to Patterson first refers to Alabama law, which allows an insurance company to avoid, within two years of issuance, a policy if the application contains misrepresentations. It then states:

"The application submitted in connection with [the policy] contained questions regarding the insurability of Bruce L. Patterson. Based on the answers contained in the application, this policy was issued....
"[Liberty National] ... received medical records which indicate that Bruce L. Patterson has been drawing Social Security Insurance Benefits.... These records show Mr. Patterson was treated in the past for alcohol dependency, depression, and anxiety, and was prescribed numerous medications for treatment of these conditions. The records indicated that correct information was not disclosed on the application. Had the correct information been furnished, Bruce L. Patterson would not have been an acceptable risk ... and would not have been issued the policy."
The letter does not state with particularity fraud in connection with the answers on the application relating to cirrhosis of the liver and drug abuse, matters relied on by Liberty National at the trial but not referred to in its motion for a summary judgment.
[9] Chief Justice Nabers, in a dissenting opinion, concludes that Patterson was given sufficient notice that Liberty National would assert the affirmative defense of misrepresentation by its pre-suit letter to Patterson, by production of the claim file during discovery, and by the deposition of Liberty National's claims officer. As noted earlier in this opinion, Liberty National's letter, assuming that a pre-suit letter can substitute for a pleading in a subsequent action, did not put Patterson on notice of Bruce's alleged misrepresentations dealing with cirrhosis of the liver or drug abuse. As for the claim file, as much of it as is decipherable appears to indicate that Liberty National based its denial of Patterson's claim on Bruce's answers to the questions on the application dealing with disability and alcohol abuse. In any event, Liberty National admits in its appellate brief that the additional misrepresentations relied upon by Liberty National at trial "were not a part of the record on which Liberty National based its initial decision." (Liberty National's brief at 45.) Finally, according to the deposition of Liberty National's claims officer, the only misrepresentation upon which Liberty National definitively based its denial of Patterson's claim was the misrepresentation dealing with disability.
[10] Chief Justice Nabers would defer to the trial court's discretion in admitting evidence. But as we have previously stated, a motion to amend pursuant to Rule 15, Ala. R. Civ. P., was the correct procedure to be used in determining if evidence of the additional misrepresentations relied upon at trial should have been allowed. It was Liberty National's duty to invoke that discretion by filing such a motion.
[11] The question whether Liberty National should be allowed to amend its pleadings on remand is not before us.
[12] Liberty National opposed Patterson's summary-judgment motion in which Patterson argued, among other things, that Liberty National was required to plead specifically misrepresentation under § 27-14-7 as an affirmative defense. In a footnote to that argument, Liberty National stated that it should be permitted to amend its answer to plead affirmatively the misrepresentation defense, "should the court deem it necessary for Liberty National to plead it formally...." The trial court apparently denied Patterson's summary-judgment motion. Liberty National does not argue before us, however, that its answer was "informally amended"; instead, it contends that the trial court's apparent denial of Patterson's motion for a summary judgment was a "ruling that the defense need not be pleaded in the manner proposed by Patterson." Liberty National's brief at 28. Under these circumstances, where the record does not reflect that Liberty National treated the pleadings as "informally amended," but rather insists that no amendment, formal or informal, was necessary, we decline to reach the question whether an informal amendment of the pleadings would suffice as an alternative basis for affirmance.
[13] Even if we were to read Barnes v. Dale, discussed at note 4, supra, as permitting Patterson to assert error with respect to the denial of her motion for a JML, notwithstanding her failure to renew her preverdict motion, we would simply treat the preverdict motion as the equivalent of a postverdict motion under Rule 50(b), Ala. R. Civ. P. The trial court's latitude under Rule 50(b) ranges from "allow[ing] the judgment to stand," or "reopen[ing] the judgment and either order[ing] a new trial or direct[ing] the entry of judgment as a matter of law." Under the circumstances here presented where the harmless-error rule is inapplicable, even if we were to treat Patterson's preverdict motion as the equivalent of a Rule 50(b) motion, we would not remand this case for the entry of a judgment as a matter of law in favor of Patterson on the record as it now stands. See Smith v. Washington Sheraton Corp., 135 F.3d 779, 783 (D.C.Cir.1998) ("Having concluded that the district court erred in denying Washington Sheraton Corporation's motion for judgment as a matter of law, we have three choices. We may enter judgment for that party, or we may order a new trial, or we may remand the case to the district court to determine whether a new trial is appropriate. For the reasons next discussed we order a new trial." (citations omitted)).
[14] The letter read as follows:

"We have received the necessary claim forms and additional information regarding the death of Bruce L. Patterson.
"....
"[Liberty National], upon receiving notice of the death of Bruce L. Patterson, made its normal investigation. We received medical records which indicate that Bruce L. Patterson has been drawing Social Security Insurance Benefits for his disability since October, 1991. These records show that Mr. Patterson was treated in the past for alcohol dependency, depression, and anxiety, and was prescribed numerous medications for treatment or these conditions. The records indicated that correct information was not disclosed on the application. Had the correct information been furnished, Bruce L. Patterson would not have been an acceptable risk under the rules of [Liberty National] for this policy and would have not have been issued the policy.
"In view of this, it is the decision of [Liberty National] to deny your claim and refund all premiums paid on this policy. We are enclosing our check in the amount of $297.44 representing this amount.
"You, of course, appreciate the fact that [Liberty National], by the contents of this letter, does not waive any defenses and specifically reserves the right to interpose any applicable defenses to any claims."
[15] For example see Grant v. Preferred Research, Inc., 885 F.2d 795 (11th Cir.1989); Bayou Fleet, Inc. v. Alexander, 234 F.3d 852 (5th Cir.2000); and Carter v. United States, 333 F.3d 791 (7th Cir.2003).