The plaintiffs Richard Meador and Kimberly Meador appeal: (1) a judgment entered on a jury verdict in favor of the defendant Cincinnati Insurance Company ("Cincinnati"); and (2) the denial of the plaintiffs' postjudgment motion for a new trial. We reverse and remand.
In April 2003, the plaintiffs sued Cincinnati for breach of contract.[1] The plaintiffs alleged that they had sustained a theft loss on May 20, 2002, when they were insured against such a loss by a policy of renter's insurance issued to them by Cincinnati ("the policy"); that they had given Cincinnati timely notice of their theft loss; that they had complied with all of the policy's requirements regarding the submission of their claim; and that Cincinnati had refused to pay their claim on November 26, 2002. Answering the plaintiffs' complaint, Cincinnati admitted that the policy insured the plaintiffs against a theft loss on May 20, 2002; that the plaintiffs had given Cincinnati timely notice of their alleged theft loss; and that Cincinnati had denied the plaintiffs' claim on November 26, 2002. However, Cincinnati denied that the plaintiffs had sustained a theft loss on May 20, 2002, and that the plaintiffs had complied with all of the requirements in the policy regarding the submission of the claim. As one of its affirmative defenses, Cincinnati averred that "[t]he plaintiffs breached the policy of insurance issued to them by the defendant. Therefore, there was no coverage under the policy for the claim submitted by the plaintiffs."
At trial, the evidence established that the policy contained the following provision regarding fraud ("the fraud provision"):
"[Casualty and liability coverage] — CONDITIONS
". . . .
"C. Concealment or Fraud
 "The entire policy shall be void if[,] whether before or after a loss[,] any `insured' has:
 "1. Intentionally concealed or misrepresented any material fact or circumstance; or
 "2. Made false statements or engaged in fraudulent conduct;
"relating to this insurance."
Before the jury-charge conference, the trial court gave the parties' counsel the written instructions the trial court proposed to use in charging the jury. One of those proposed instructions ("the fraud instruction") stated:
 "Pursuant to a condition in the policy, however, the policy is deemed void if the Meadors intentionally concealed or misrepresented any material fact or circumstance. Because the Meadors have the burden of proving the existence of an *Page 62 enforceable contract, they must prove to your reasonable satisfaction that the policy was not voided, meaning that they must prove that they did not intentionally conceal or misrepresent any material fact or circumstance.
 "If you are not reasonably satisfied that the policy was in effect — in other words, if you determine that the policy was voided by intentional concealment or misrepresentation of a material fact or circumstance, then your verdict must be for Cincinnati. This would end your deliberations."
(Emphasis added.) At the charge conference, the plaintiffs' counsel objected to the fraud instruction on the ground that it misstated the burden of proof. The plaintiffs asserted that Cincinnati bore the burden of proving the existence of fraud because fraud was an affirmative defense. However, stating that the plaintiffs bore the burden of proving the nonexistence of fraud because they bore the burden of proving the existence of an enforceable contract, the trial court overruled the plaintiffs' objection to the fraud instruction.
The trial court charged the jury with the fraud instruction. Immediately after the trial court charged the jury and before the jury began its deliberations, the plaintiffs reiterated their objection to the fraud instruction.
The jury subsequently returned a verdict in favor of Cincinnati, and the trial court entered a judgment on the jury verdict. Pursuant to Rule 59(a), Ala. R. Civ. P., the plaintiffs timely moved the trial court for a new trial. As one of their grounds, the plaintiffs asserted that the trial court had erred in charging the jury with the fraud instruction. The trial court denied the plaintiffs' motion for a new trial, and the plaintiffs timely appealed to this court. Because this court lacked subject-matter jurisdiction, this court transferred the appeal to the supreme court. However, the supreme court transferred the appeal back to this court pursuant to § 12-2-7(6), Ala. Code 1975.
On appeal, the plaintiffs first argue that the fraud instruction erroneously placed on them the burden to prove the nonexistence of fraud because, the plaintiffs say, fraud was an affirmative defense that Cincinnati bore the burden of proving. In Patterson v. Liberty National Life Insurance Co.,903 So.2d 769, 777-79 (Ala. 2004), the Alabama Supreme Court expressly held that an insurer's misrepresentation defense based on § 27-14-7, Ala. Code 1975, is an affirmative defense.[2] In pertinent part, the supreme court stated:
 "Rule 8(c)[, Ala. R. Civ. P.,] lists several affirmative defenses, including `fraud . . . and any other matter constituting an avoidance or affirmative defense.' The Committee Comments on 1973 Adoption to Rule 8 state, in relevant part, `[t]he affirmative defenses listed in Rule 8(c) are only a partial list of defenses *Page 63 
which should be set forth affirmatively and the rule provides that any "matter constituting an avoidance or affirmative defense" must be pleaded.'
". . . .
 "This Court has defined an affirmative defense as a defense that raises a new matter and that would be a defense even if the relevant allegations in the plaintiff's complaint were true. Bechtel v. Crown Cent. Petroleum Corp., 451 So.2d 793, 795 (Ala. 1984). In the instant case, Liberty National contends that [one of the insureds] made certain misrepresentations in his insurance application. The defense, if proven, allows Liberty National to avoid the policy under § 27-14-7. Because the statute, when applicable, makes an insurance policy voidable at the option of the insurer, it constitutes an affirmative defense to a claim based on the breach of an existing insurance contract. A defense of misrepresentation under § 27-14-7 is an `argument that, if true, will defeat the plaintiff's . . . claim, even if the allegations in the complaint are true.' Black's Law Dictionary 451 (8th ed. 2004). In other words, if successful, the defense will allow Liberty National to avoid an otherwise valid insurance contract.
 "Based on the foregoing caselaw and analysis, we conclude that a defense of misrepresentation under § 27-14-7, Ala. Code 1975, is an affirmative defense
that is waived if not properly pleaded."
(Footnote omitted; emphasis added.)
Cincinnati, however, argues that its fraud defense is not an affirmative defense like a fraud defense based on § 27-14-7
because, Cincinnati says, its fraud defense is based on a policy provision that conditioned the existence of an enforceable contract of insurance on the nonexistence of fraud. According to Cincinnati, because the plaintiffs bore the burden of proving the existence of an enforceable contract, they bore the burden of proving the nonexistence of fraud. However, even if the fraud provision conditioned the existence of an enforceable contract on the nonexistence of fraud, Cincinnati has not cited to this court any legal authority specifically holding that such a provision would necessarily place on the plaintiffs the burden to prove the nonexistence of fraud. On the other hand, Corbin on Contracts
states:
 "The problem of burden of proof is not wholly solved by determining whether a fact is a condition precedent or a condition subsequent; there are other elements to be considered. If a fact is a condition precedent to the defendant's duty of immediate performance, it is a necessary part of the plaintiff's cause of action; but there are cases in which its existence will be assumed, unless the defendant disproves it. Thus, the plaintiff often has no right to performance by the defendant if the plaintiff was guilty of fraud or had an illegal purpose; but the burden of proving the existence of either is thrown on the defendant. This is so for reasons of general public policy, not because fraud and illegality are conditions subsequent. . . ."
 "As stated above, the plaintiff is sometimes relieved of the burden of proving a condition precedent. An insurance policy contained the following express provision: `This entire policy shall be void if the insured has concealed or misrepresented in writing or otherwise any material fact or circumstance concerning this insurance or the subject thereof, or if the interest of the insured in the property be not truly stated therein, or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, *Page 64 
whether before or after the loss[.]' . . . The defendant alleged that the plaintiff, both before and after the loss, falsely stated the value of the stock, which was the subject of the insurance. The court rightly held that the burden of proving fraud on the part of the plaintiff rested on the defendant insurance company. . . .
 "This rightly indicates that not only is it not necessary for the plaintiff to bear the burden of proof with respect to the issue of fraud; it is not even necessary for the plaintiff to allege affirmatively that there has been no fraud. . . .
". . . .
 "The court rightly said that it was no part of the insured's duty to negative a condition subsequent; but in this case with respect to the existence or non-existence of false swearing, it was not even necessary for the insured to allege the performance of a condition precedent. For obvious reasons of policy long recognized by the courts with respect to the issue of fraud, both the burden of allegation in the pleadings and the burden of proving by evidence are thrown upon the defendant."
3A Arthur L. Corbin, Corbin on Contracts § 749 and § 750 (1960) (footnotes omitted; emphasis added).
Corbin indicates that, even if the fraud provision in the case now before us purported to make the nonexistence of fraud a condition precedent to the existence of an enforceable contract, the fraud provision neither imposed on the plaintiffs a burden to allege the nonexistence of fraud nor imposed on the plaintiffs a burden to prove the nonexistence of fraud. Because the fraud provision did not even impose on the plaintiffs a burden to allege the nonexistence of fraud, Cincinnati's fraud defense based on the fraud provision in the policy, like Liberty National's fraud defense based on § 27-14-7 in Patterson, was "an `argument that, if true, [would] defeat the plaintiff[s'] . . . claim, even if the allegations in the complaint are true.'"Patterson, 903 So.2d at 779. Consequently, Cincinnati's fraud defense was an affirmative defense under the holding inPatterson. "The burden of proving an affirmative defense is on the defendant." Foremost Ins. Co. v. Parham, 693 So.2d 409, 425
(Ala. 1997). Therefore, we hold that the fraud instruction was erroneous because it placed on the plaintiffs the burden to prove the nonexistence of fraud instead of placing on Cincinnati the burden to prove the existence of fraud. "It is reversible error to give a charge which misplaces the burden of proof."Associated Doctors Health Life Ins. Co. v. Hanks,44 Ala.App. 92, 95, 203 So.2d 148, 151 (1967). Accordingly, we reverse the judgment the trial court entered on the jury verdict and remand the case for a new trial. This holding pretermits discussion of the second issue raised by the plaintiffs.
REVERSED AND REMANDED.
CRAWLEY, P.J., and THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result, without writing.
[1] The plaintiffs also alleged a claim for bad-faith refusal to pay an insurance claim. However, the trial court entered a summary judgment in favor of Cincinnati on that claim, and the plaintiffs have not appealed the summary judgment. Consequently, the plaintiffs' bad-faith claim is not before this court.
[2] In pertinent part, § 27-14-7 provides:
 "(a). . . . Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:
"(1) Fraudulent;
 "(2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
 "(3) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise."